# STATE OF MARYLAND *v.* DONALD ELBERT BERRY

[No. 37, September Term, 1979.]

*Decided April 23, 1980.*

492

*Motion for reconsideration filed April 28, 1980; motion granted and opinion modified May 5, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ▮ORTH, COLE and DAVIDSON, JJ.

*Ray E. Stokes, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Michael R. Malloy, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

The question presented here is whether a trial court may revoke a defendant's probation for failure to support his wife and children as ordered and sentence him under the original conviction when the period of probation has expired.

The statute involved is Maryland Code (1957, 1976 Repl. Vol., 1979 Cum. Supp.), Art. 27, § 88. Section 88 (a) deals with the wilful neglect to provide for support and maintenance of a spouse and § 88 (b) deals with the wilful neglect to provide for support and maintenance of a child. Both sections make such failure a misdemeanor punishable by a $100 fine and three years imprisonment and both sections authorize the trial court to release the defendant on probation for a period of three years upon condition that the defendant comply with the court's order of probation. Both sections further provide in pertinent part, that

> [i]f the court be satisfied by information and due proof under oath, at any time during the three years, that the defendant has violated the terms of the order, *the court immediately may proceed to the trial of the defendant* under the original indictment, *or sentence him* or her under the original conviction, as the case may be. [Emphasis supplied.]

We shall be primarily concerned with the application of this last part of the statute to the facts of the instant case.

On March 7, 1973, Donald E. Berry was convicted on a guilty plea in the Criminal Court of Baltimore of nonsupport of his wife and two children. He was sentenced to eighteen months imprisonment for both offenses. However, the execution of this sentence was suspended, and he was placed on probation for three years, commencing March 7, 1973, conditioned upon his making weekly support payments as ordered by the court.

On March 4, 1976, three days prior to the expiration of the probationary period, a petition was filed in the Criminal Court of Baltimore alleging that Berry had violated the terms of his probation by "failing to make payments" in accordance with the order of March 7, 1973. The facts recited in the petition were sworn to by a parole and probation officer, before a judge of the Supreme Bench of Baltimore City. A violation of probation warrant was issued on March 4, 1976 for Berry's arrest. He was not served with this warrant until May 1, 1978, and it was not until June 5, 1978, over two years after the expiration of the probationary period, that a hearing was held on the charge of violation of probation. At the hearing, the court found him guilty of violating his probation, revoked his probation and reimposed the original eighteen month sentence to be served consecutively to a sentence he was serving on an unrelated offense.

The Court of Special Appeals reversed the judgment finding that he had violated his probation and vacated the sentence. 41 Md. App. 563, 398 A.2d 59 (1979). It held that the trial court lacked jurisdiction to entertain the revocation proceeding because the language of the statute required the trial court to be "satisfied by information and due proof under oath, at any time during the three years. . . ." That court regarded these words as pointing to the revocation trial itself and not to the petition to revoke filed by the probation department. We granted certiorari to determine the impact of this statutory language.

Before us, the State contends that this language is ambiguous because it is susceptible of two interpretations. It maintains that the words do not make clear whether this process of satisfaction refers to the preliminary judicial finding of probable cause on which an arrest warrant for violation of probation is based, or whether it refers to the final adjudication at a probation revocation hearing. The State urges us to construe the statute as requiring only the initial determination of probable cause for issuance of the warrant as necessary to be conducted within the three year period in order to toll the running of the probation period and thus permit a trial court to revoke probation at some point after the three year period. The defendant, on the other hand, contends that the trial court was powerless to revoke this probation after the probationary period had expired and claims that to hold as the State urges would deny him due process in that he would be denied a hearing. We shall examine this statutory language in the light of certain principles announced in our prior cases.

As we have stated many times, the cardinal rule of statutory construction is to ascertain and carry out the actual intention of the legislature. *Board v. Stephans,* 286 Md. 384, 408 A.2d 1017 (1979); *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 407 A.2d 738 (1979); *S.A.S. Personnel Consult. v. Pat-Pan,* 286 Md. 335, 407 A.2d 1139 (1979); *Unnamed Physician v. Comm'n,* 284 Md. 1, 400 A.2d 396 (1979). The statutory language itself provides the clearest indication of the legislative intent and is thus the primary source for all statutory construction. *Board v. Stephans, supra; Harbor Island Marina v. Calvert Co., supra.* We also adhere to the principle that the court should confine itself to construing the statute according to the ordinary and natural signification of the words used without resorting to subtle or forced interpretations designed to limit or extend the operation of the statute. *Harbor Island Marina v. Calvert Co., supra; Mauzy v. Hornbeck,* 285 Md. 84, 400 A.2d 1091 (1979); *Massage Parlors, Inc. v. City of Balto.,* 284 Md. 490, 398 A.2d 52 (1979). When the words used convey a clear and plain meaning, there is no need to look beyond the

statute to ascertain the legislative intent. *Collier v. Connolley,* 285 Md. 123, 400 A.2d 1107 (1979); *Mauzy v. Hornbeck, supra,* 285 Md. at 93; *Massage Parlors, Inc. v. City of Balto., supra,* 284 Md. at 494-95. Stated differently, when the statute is free from ambiguity, the court may not disregard the natural impact of the words so as to make the statute express an intention which is different from its plain meaning. But where the statutory language is of doubtful meaning, the Court must venture beyond the words of the statute and consider the subject matter of the statute, the purpose underlying its enactment and the object sought to be accomplished. *Board v. Stephans, supra; State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S. Ct. 1680, 48 L. Ed. 2d 185 (1976); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 186, 333 A.2d 313 (1975); *Gatewood v. State,* 244 Md. 609, 617, 224 A.2d 677 (1966). Finally, the Court should consider the consequences which may flow from one interpretation rather than another and adopt the construction which is in harmony with the general scheme of the enactment and one which will assist in effectuating the legislative purpose. *Board v. Stephans, supra; Harbor Island Marina v. Calvert Co., supra; Comptroller v. John C. Louis Co.,* 285 Md. 527, 538-39, 404 A.2d 1045 (1979); *Fairchild v. Maritime Air Serv., supra,* 274 Md. at 185-86. In this pursuit,

> [r]esults that are unreasonable, illogical or inconsistent with common sense should be avoided and an interpretation should be given which will not lead to absurd or anomalous results. [*Comptroller v. John C. Louis Co., supra,* 284 Md. at 539.]

With these principles in mind, we turn to the statute to determine if any ambiguity exists. If no such impediment is found then this Court is not called upon to construe the meaning of the statute because the legislative intent will be clear by the language used.

A grammatical analysis of the sentence in question reveals a main clause: "the court immediately may proceed

to the trial of the defendant ... or sentence him. ..." This main clause is preceded by two subordinate clauses: 1) "If the court be satisfied by information and due proof under oath" and 2) "that the defendant has violated the terms of the order." These two subordinate clauses are separated by commas from the adverbial phrase "at any time during the three years." As we see it this phrase can be read as modifying either what precedes it or what follows it and thus ambiguity exists.

If the phrase modifies the clause that precedes it, the statute *would* read in part:

> if at any time during the three years, the court be satisfied ... that the defendant has violated ... the order, the court immediately may proceed. ...

This construction would require the State to hold the actual revocation hearing within the three year period or lose jurisdiction over the defendant. Such a construction is unreasonable and would lead to absurd results. It would permit a probationer to violate his probation and, by merely avoiding arrest (whether voluntarily or involuntarily) during the probationary period, escape punishment; or even if in custody awaiting trial, the probationer could escape punishment if the hearing was not completed during the three year probationary period. These absurd consequences cannot be squared with the legislative intent.

The purposes of Art. 27, § 88 are to assist spouses and children in directly procuring support and thereby preventing them from becoming public burdens, to punish the offense of failing to provide support, and, by the fear of punishment, to prevent the commission of such an offense. The purposes of the provisions authorizing the court to place the defendant on probation are to enable the defendant to continue to make support payments and to strengthen the incentive to do so by providing an opportunity to avoid imprisonment. This purpose can be achieved only if the defendant knows that his conduct during the probation period is determinative of his status and that the consequence of any violation may be the reinstatement of

the original proceedings or sentence. An interpretation of the statute which requires that all court proceedings incident to probation revocation be completed within the three year probationary period, leads to an unreasonable and illogical result.

There are a variety of reasons why a court may not be able to complete probation revocation proceedings within the probationary period. Some of these reasons may be unrelated to the defendant's conduct. Dockets may be overcrowded and prosecutors, defenders, and witnesses may be unavailable. Other reasons are directly attributable to the defendant's own conduct. For example, he may be unavailable because he becomes ill, is incarcerated elsewhere, or has purposefully absconded. To make the imposition of a prison sentence dependent upon such fortuitous and uncertain circumstances defeats the intended purpose of the statute.

If the phrase modifies the clause which follows it, the statute *would* read

> if the court be satisfied . . . that the defendant has violated . . . the order at any time during the three years, the court immediately may proceed. . . .

This construction of the statute would allow the State to conduct a hearing at any time, even if the probationary period has expired, so long as the court is satisfied by due proof that the defendant has violated the terms of his probation within the three year period. We believe this to be the reasonable construction to carry out the legislative intent.

Statutes and court decisions in a majority of jurisdictions reflect the view that sound public policy requires that under appropriate circumstances, probation may be revoked after the probationary period has expired, and that proceedings incident to probation revocation need not be completed within that period. They emphasize that the date of the alleged violation of probation is determinative, and that if that date falls within the probationary period, probation can

be revoked, even if the proceedings incident to the revocation are completed thereafter.[1] These statutes and court decisions establish that revocation of probation depends upon the defendant's compliance with the terms and conditions of his probation during the probationary period, and not upon fortuitous and uncertain circumstances unrelated to the essential question whether the defendant has violated the terms of the probation. Accordingly, they support the view that Art. 27, § 88 should be interpreted to mean that, if a defendant violates the terms of his probation at any time during the three year probation period, the court may revoke his probation, even if the proceedings incident to revocation may not have been completed during that period.

Our holding that the State may conduct a revocation hearing at any time, even if the probationary period has expired, is not intended to imply that the state is relieved of its obligation to initiate and consummate such hearings diligently and promptly. The probationer is entitled to a fair hearing where he can confront his accusers and present his defense, *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). It is not merely the right to a hearing which is guaranteed, but the fairness of that hearing as well. "The proceedings are to be tested by fundamental fairness — the touchstone of due process." *State v. Bryan*, 284 Md. 152, 159 n. 6, 395 A.2d 475 (1978).

---

1. Most courts have held that if a probation revocation proceeding is initiated within the probationary period, it may be completed thereafter. United States v. Strada, 503 F.2d 1081, 1084 (8th Cir. 1974); United States v. Bartholdi, 453 F.2d 1225, 1226 (9th Cir. 1972); Carpenter v. State, 355 So. 2d 492, 493-94 (Fla. Dist. Ct. App. 1978); People v. Dawes, 52 Ill. 2d 121, 284 N.E.2d 629, 630-31 (1972); State v. Rosteet, 257 La. 863, 244 So. 2d 813, 814 (1971); Sherman v. Warden, Nev., 581 P.2d 1278, 1279 (1978); Barthiume v. State, 549 P.2d 366, 367 (Okla. Cr. App. 1976); Commonwealth v. Lipton, 238 Pa. Super. Ct. 124, 352 A.2d 521, 522-23 (1975); State v. Taylor, 111 R.I. 653, 306 A.2d 173, 175 (1973); Allen v. State, 505 S.W.2d 715, 717 (Tenn. 1974); Nicklas v. State, 530 S.W.2d 537, 540-41 (Tex. Crim. App. 1975); State v. Hultman, 92 Wash. 2d 736, 600 P.2d 1291, 1293 (1979). See State v. Jones, 284 So. 2d 231, 233-34 (La. 1973); People v. Wakefield, 46 Mich. App. 97, 207 N.W.2d 461, 462-63 (1973); State v. O'Neal, 24 Ore. App. 423, 545 P.2d 910, 912 (1976); State v. Hutto, 252 S.C. 36, 165 S.E.2d 72, 76-77 (1968).

500

Numerous cases support our view that in order to comply with the dictates of due process, the State must bring about the revocation hearing with due diligence or reasonable promptness so as to avoid prejudice to the defendant. *United States v. Tyler,* 605 F.2d 851 (5th Cir. 1979); *United States v. Sciuto,* 531 F.2d 842 (7th Cir. 1976); *see Jacobs v. United States,* 399 A.2d 38 (D.C. 1979); *People v. Miller,* 77 Mich. App. 381, 258 N.W.2d 235 (1977); *cf. Greene v. Michigan Department of Corrections,* 315 F.2d 546 (6th Cir. 1963) (parole revocation). Other courts, while not expressly mentioning the due process clause have held that revocation proceedings must be brought within a reasonable time. *Commonwealth v. Smith,* Pa. Super. Ct., 403 A.2d 1326 (1979); *State v. Oppelt,* 601 P.2d 394 (Mont. 1979); *see Anderson v. Wilson,* 397 F.2d 255 (9th Cir. 1968); *State v. White,* 193 Neb. 93, 225 N.W.2d 426 (1975); *Decker v. State,* 209 N.W.2d 879 (N.D. 1973). We also believe that whether the State has been reasonable in proceeding with a revocation hearing is the test. We do not perceive the need to set forth the factors a court will consider in determining whether the State has been diligent in instituting and conducting hearings under the statute here involved. However, we think it fair to say that, at a minimum, the State should make reasonable efforts to initiate the proceedings and to locate and serve the defendant with process so as to bring him to trial promptly. On the other hand, we think the trial court should consider the availability of the defendant to receive such process and the extent to which he has made his presence known in the community in which he lives. While what action is timely, diligent or reasonable will differ on a case by case basis, we do believe that inactivity and inattention by the State for an inordinate period of time, where the defendant has been available and has not concealed his whereabouts, may be sufficient to persuade a court that fundamental fairness should prevent the State from proceeding with the revocation hearing.

Finally, we want to make it abundantly clear that our decision that revocation proceedings must be conducted with

reasonable promptness does not indicate acceptance of the State's theory that the issuance of a warrant within the probationary period tolls the running of the three year period. For purposes of due process, we are not so concerned with the timeliness of the issuance of the warrant as we are with the timeliness of the actual hearing on the merits. If the delay is unjustified, the mere issuance of the warrant within the probationary period will not preserve the right to conduct a hearing. We hold that the State may issue the warrant within or without the probationary period so long as the actual hearing on the merits is timely held.

Turning to the instant case, we note that the arrest warrant was issued on March 4, 1976, three days prior to the expiration of the probationary period. This warrant was not served until approximately May 1, 1978 and the hearing on the merits was held on June 5, 1978. The record of the revocation proceedings reveals almost nothing about the reasons for this delay except for an unsolicited and unsubstantiated remark by the court clerk that the delay was attributable to pending criminal charges which had resulted in several postponements of the revocation proceeding. However, we need not engage in any lengthy analysis or balancing process because the defendant has alleged no prejudice as a result of the delay. Indeed, we can envision few circumstances where a defendant would be able to show prejudice when as here the issue is a narrow one of compliance with the court's order for support.

For the foregoing reasons, we must reverse the judgment of the Court of Special Appeals; however, because the Court of Special Appeals indicated in its opinion that the lower court may have committed error by failing to comply with the mandatory standards of Rule 723 c, we shall remand the case to that Court for further proceedings.

*Judgment of the Court of Special Appeals reversed and case remanded to that court for further proceedings consistent with this opinion.*
*Costs to be paid by appellee.*