# DONALD L. BLEDSOE *v.* PAMELA JANE BLEDSOE

[No. 98, September Term, 1981.]

*Decided August 9, 1982.*

The cause was argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*Edward John Skeens* for appellant.

*Joseph L. Ely,* with whom were *Ely & Ely* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

We shall determine in this appeal the validity of a *pendente lite* order from the Circuit Court for Prince George's County awarding use and possession of the family home to the wife and her two children, who are not the offspring of her husband. Specifically, we granted certiorari to decide whether the terms "child" and "children," as used in §§ 3-6A-01 (b) and 3-6A-06 (a) of the Courts and Judicial Proceedings Article, by definition include stepchildren and thereby authorize Maryland courts to award the use and possession of property to the natural parent and the stepchildren to the exclusion of the step-parent.

The facts giving rise to this controversy are not disputed. Donald and Pamela Bledsoe were married on March 5, 1977. Both parties had been married before and both had two children resulting from these marriages. Shortly after Donald married Pamela, Pamela and her two minor children moved into Donald's home which he had purchased sometime in 1972. Donald's children never lived in this home.

In May, 1977, Donald had the title to the property changed so that the current deed of record shows ownership by Donald and Pamela as tenants by the entirety. Donald,

Pamela, and her two children lived in the home for approximately four years, when Pamela left the home and filed for a divorce *a mensa et thoro,* alleging constructive desertion and requesting the court to award her use and possession of the home together with some personal property. After a hearing, a master for domestic relations causes recommended that Pamela be awarded use and possession of the home. Donald excepted and the Circuit Court for Prince George's County overruled the exception and entered an order declaring the home the couple shared to be the "family home", awarding Pamela the use and possession thereof, and requiring Donald to contribute one-half of the first trust, second trust, and real estate taxes upon the home, *pendente lite.* Donald appealed to the Court of Special Appeals.[1] We granted certiorari prior to consideration by the intermediate appellate court.

In *Pitsenberger v. Pitsenberger,* 287 Md. 20, 410 A.2d 1052 (1980), we held that Ch. 794 of the Acts of 1978, now codified as Maryland Code (1974, 1979 Cum. Supp.), §§ 3-6A-01 to 3-6A-07 of the Courts and Judicial Proceedings Article, dealing with the disposition of property *pendente lite* in divorce and annulment proceedings, was constitutional. While *Pitsenberger* addressed issues of procedural due process and whether there was an unlawful taking of property by the dispositions authorized by the statute, it did not discuss the specific issue in the case *sub judice.* However, we did observe that the General Assembly had set forth with particularity the purpose of the legislation in the preamble to the statute.

> The General Assembly declares that it is the policy of this State that marriage is a union between a man and a woman having equal rights under the law. Both spouses owe a duty to contribute his or her best efforts to the marriage, and both, by

---

1. Under § 12-303 (a) of the Courts Article a party may appeal from an interlocutory order entered with regard to the possession of property with which the action is concerned.

entering into the marriage, undertake to benefit both spouses and *any children they may have.*

The General Assembly declares further that it is the policy of this State that when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family, and further, that if there are minor children in the family their interests must be given particular and favorable attention. [1978 Laws of Md., Ch. 794 (emphasis supplied).]

With this statutory preface, we turn to the arguments of the parties. Donald first contends that the subject property is not a "family home" within the meaning of the term as defined in § 3-6A-01 (b) of the Courts Article because he acquired the property prior to his marriage to Pamela. Section 3-6A-01 (b) defines the family home as property in Maryland that:

(1) was used as the principal residence of the spouses when they lived together, (2) at the time of the proceeding is owned or leased by at least one of the spouses, and (3) is being used or will be used by at least one of the spouses and a minor child as their principal residence. It does not include property acquired prior to the marriage, property acquired by inheritance or gift from a third party, or property excluded by a valid agreement.

Donald argues that this section effectively prevents the Bledsoe home from being a "family home" irrespective of his 1977 transfer of the property to Pamela and him as tenants by the entirety. While we have uncovered no Maryland case addressing this exact point, we have recognized on many occasions the proposition that property purchased entirely by one spouse but titled in the names of both as joint tenants or tenants by the entirety amounts to a gift to the other

spouse of an ownership interest in the property. *McCally v. McCally,* 250 Md. 541, 243 A.2d 538 (1968); *Anderson v. Anderson,* 215 Md. 483, 138 A.2d 880 (1958); *Hillwood v. Hillwood,* 159 Md. 167, 150 A. 286 (1930); *Lewis v. Lewis,* 140 Md. 524, 118 A. 65 (1922); *Reed v. Reed,* 109 Md. 690, 72 A. 414 (1909). Here, then, though Donald acquired the property prior to the marriage, when he created a tenancy by the entirety he made a valid gift to Pamela of an interest in the property. Therefore, this property, being the principal residence of the spouses, could not be excluded from the definition of "family home" solely because he had initially acquired it prior to the marriage. The real question is whether the Bledsoe home can qualify as a "family home" in light of the definition given to the term "child" as used in the statute.

Section 3-6A-01 (b) says, in part, that to qualify as a family home, the dwelling must be one which "is being used or will be used by at least one of the spouses and *a minor child* as their principal residence." Section 3-6A-06 of the Courts Article prescribes for the court the conditions under which it may award the use and possession of the family home for a period up to three years. In pertinent part, it provides:

> § 3-6A-06 — Family home, family use personal property.
>
> (a) The authority conferred by this section shall be exercised to permit the *children of the family* to continue to live in the environment and community which is familiar to them and to permit the continued occupancy of the family home and possession and use of family use personal property by a spouse with custody of a minor *child* who has need to live in that home. . . . In exercising its authority under this section, the court shall consider each of the following factors:
>
> (1) The best interests of *any minor child;*
>
> (2) The respective interest of each spouse in

continuing to use the family use personal property or occupy or use the family home or any portion of it as a dwelling place;

(3) The respective interest of each spouse in continuing to use the family use personal property or occupy or use the family home or any part of it for the production of income;

(4) Any hardship imposed upon the spouse whose interest in the family home or family use personal property is infringed upon by an order issued under this section.

(b) When granting a limited or absolute divorce, or annulment, the court may determine which property is the family home and family use personal property. [Emphasis supplied.]

We reach two conclusions from reviewing the statute: (1) that for a spouse to be entitled to the use and possession of the family home, that spouse must have custody of a minor child; (2) that neither of these sections includes a definition of *child* or *children of the family*. Section 3-6A-01 (d) does say that a " '[m]inor child' includes a child 18 years of age or older who, because of mental or physical disability, is dependent upon a parent." However, rather than defining the term, that section merely insures that the protection of the statute is extended to a class of dependents over eighteen who, because of some disability, have the same basic needs as those under eighteen. The statute does not explicitly indicate what relationship the child must bear to the parties to the divorce. A broad interpretation could include all children living in the family home no matter whether or how related to the parties to the divorce. A narrow reading of the terms would limit the definition to the natural or adopted children of each of the parties.

In determining which interpretation shall apply, it is the duty of the courts to declare the law as the General Assembly has made it, that is, to ascertain and give effect to the intention of the legislature. This we have said on many occasions is the cardinal rule of statutory construction. *State v.*

*Berry,* 287 Md. 491, 465-96, 413 A.2d 557 (1980); *Police Commissioner of Baltimore City v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977). In ascertaining the legislative intent we look to the language used, and when such language is clear and unambiguous, it must be held to mean what it expresses. However, where the language is ambiguous and of doubtful import, the duty of the courts is to ascertain and give effect to the true legislative intent. In short, the judicial function of statutory construction lies wholly within the domain of ambiguity and uncertainty. When exercising this function the courts may resort to extrinsic aids such as examining the history of the passage of the law, the reports of committees and commissions, the introduction of amendments and testimony given before legislative committees. As we said in *State v. Berry, supra:*

> where the statutory language is of doubtful meaning, the Court must venture beyond the words of the statute and consider the subject matter of the statute, the purpose underlying its enactment, and the object sought to be accomplished. . . . Finally, the Court should consider the consequences which may flow from one interpretation rather than another and adopt the construction which is in harmony with the general scheme of the enactment and one which will assist in effectuating the legislative purpose. [*Id.* at 496 (citations omitted).]

With these principles and guidelines before us, and the parties having conceded and we having determined that the statute is ambiguous, we turn to exercise the function of construction.

In 1976, Governor Marvin Mandel established the Governor's Commission on Domestic Relations Laws to study the constitutional, statutory, and common law regarding marriage and the dissolution of marriage in Maryland. Pursuant to its charter the Commission proposed a bill, ultimately Senate Bill 604, Ch. 794 of the Laws of 1978, to the General Assembly to remedy perceived inequities in the then "Maryland law governing the disposition of real and

personal property upon divorce or annulment. *Report Accompanying The Commission's Proposed Bill On The Disposition Of Property In Connection With A Divorce Or Annulment, at 2 (1978)*. The proposed bill was adopted in substantially the same form as the commission proposed it and the comments of the commission on the bill are, therefore, highly relevant.

At page twelve of its report, regarding § 3-6A-06, the commission explains the purposes to be accomplished by the court in awarding use and possession of the family home and family use personal property.

> Subsection (a) states two primary purposes which the authority conferred by this Section on the family home should be used to accomplish. These are to permit the children of the family to live in an environment and community which is familiar to them and to permit the continued occupancy of the family home by a spouse who has a special need to live in that home. The Commission believes, on the one hand, that these two purposes comprise all that are entitled to priority in the exercise of the authority conferred by this Section; on the other, the Commission considers the accomplishment of these purposes justifies the imposition of the specific burdens on the ready disposability of the property and on the financial obligation of the respective parties that the exercise of this authority may involve.

Two points are worthy of note in this statement of purposes. First is that the second explicated objective of the statute is to permit the *spouse* with a special need to continue to live in the family home. Second is the statement that these two purposes are *all* that are entitled to priority.

Consistent with the language contained in its report, the commission's recommended bill, in § 3-6A-06 (a), stated that the reason for the use and possession award is to continue "occupancy of the family home by a spouse who has a special need." Commission's Report at 25. However, Chapter 794 of

the Laws of 1978, codified as Courts Article § 3-6A-06 (a), amends that language to read, "continued occupancy of the family home. . . by a spouse *with custody of a minor child.*" (Emphasis supplied.) In addition, in its definition of family home the commission provided that it must be "used by at least one of the spouses as his or her principal residence." Commission's Report at 22. The legislature altered this language to read that the dwelling must be "used by *one of the* spouses *and a minor child* as their principal residence." Courts Article, § 3-6A-06 (b) (emphasis supplied).

From the commission's statement of purpose and the subsequent legislative amendments it is apparent that the legislature has at least partially altered the emphasis. The commission felt that the only two purposes that justified the imposition of the specific burdens of a use and possession order on the ready disposability of property and on the financial obligations of the respective parties were the protection of the children of the family and the special needs of a spouse. The legislature, in encumbering the needs of a spouse with the additional burden that the spouse have custody of a minor child, has unmistakably shifted the focus of the Act to the children of the family, making it abundantly clear that if one spouse is to be temporarily deprived of his or her interest in the family abode this is to occur as a result of an obligation he or she owes to the children of the family, and nothing else.

It is significant that as the legislature shifted the focus of and priorities served by the statute, it retained the language originally proposed by the commission regarding "children of the family." Both the statute and the statement of purpose proposed by the commission modify children with the prepositional phrase "of the family." Obviously, the legislature, which so carefully reworded the statute, meant to retain this definitional limitation.

There was another modification wrought by the General Assembly in § 3-6A-06 (a) which, while not brought out by the parties to this appeal, has received some comment and merits our attention. In its proposed draft, the Commission listed four factors to be considered by the judge in

determining whether and to whom to award use and possession of the family home. At the top of the commission's list was "the best interests of any minor children of the parties." Commission's Report at 25. The legislature amended the factor to read, "the best interests of any minor child." Courts Article, § 3-6A-06 (a) (1). It has been suggested that this signals an intent by the legislature to broaden the class of protected individuals to include children other than the natural or adopted children of the immediate parties to this litigation. *See,* Comment, *Property Disposition Upon Divorce in Maryland: An Analysis of the New Statute,* 8 U.Balto. L. Rev. 377, 388 n. 75 (1971). We disagree. If the legislature had intended to so drastically change the scope of the provision it most certainly would have amended the language "children of the family." Clearly, that phrase does not connote any different meaning than "children of the parties." Rather, the legislature, which apparently went over this statute word by word, appears to have merely deleted an unnecessary and possibly confusing difference in terminology, *i.e.,* "children of the family" and "children of the parties," and, at the same time, eliminated a redundancy.

The legislature, therefore, seems to have lucidly expressed its intent that when awarding use and possession of a family home, and thereby expelling the other spouse from the dwelling, it would only do so when one spouse needed the home for the benefit of children of that family. As the General Assembly stated in the preamble, the legislation reflects the attitude that, through marriage, the partners "undertake to benefit both spouses and any children *they may have*" and that when the marriage is dissolved the property interests should be "adjusted fairly and equitably . . . and . . . if there are minor children in the family their interests must be given particular and favorable attention."

Our interpretation of child as used in subtitle 6A is consistent with this Court's past interpretations of the term "child" to mean progeny of the parties involved and not stepchildren. A case in point is *Brown v. Brown,* 287 Md. 273, 412 A.2d 396 (1980). In *Brown* a husband contended

that he could not be imprisoned for failure to honor his contractual obligation to support a stepchild under Maryland Constitution, Article III, § 38. The lower court in that case, however, contended that the exclusion contained in Constitution, Article III, § 38, which allows imprisonment for failure to pay court ordered support for a dependent child, encompassed the failure to honor a contractual commitment to support a stepchild. This Court reversed the lower court, holding that in regard to the Constitution, "dependent child" was one entitled to support as the result of a legal duty and there was no legal duty to support a stepchild.

The rationale developed in *Brown* is particularly helpful for our purposes in the case *sub judice.* In *Brown* we noted that the legal obligation to support children arises out of parenthood. *Brown v. Brown, supra,* 287 Md. at 284. We also developed four reasons, three of which apply here, for holding that the word child, when used in legislation, refers to the natural or adopted child of the spouses concerned. Quoting *Billingsley v. Bradley,* 166 Md. 412, 171 A. 351 (1934), we found that "the popular conception of the meaning of the words 'child or children' is 'immediate offspring' "; that Black's Law Dictionary (3d ed. 1933) states that, in the law of domestic relations, the word child is the correlative of parent and means a son or daughter; and that when the legislature intends the word child to have other than its ordinary meaning, it generally defines explicitly the scope of the word so used. *Brown v. Brown, supra,* 287 Md. at 284-85.

In light of our holding in *Brown* and the indicia of legislative intent discussed herein we think it apparent that the legislature intended to include in its provisions for use and possession of the family home only natural or adopted children of the parties to the divorce litigation. The statute was intended to balance equities under unfortunate and sometimes heart rending circumstances. It would be inconsistent to find that a spouse has no legal duty to support stepchildren, that the ordinary acceptation of the word child excludes stepchildren, and then torture the statute to find an intent to expel a spouse from his or her home based

on an obligation to protect the children of the other spouse when the statute and its history indicate otherwise.

We hold, therefore, that, as Courts Article, § 3-6A-06 (a) states, for a court to award use and possession of the family home it can only do so to protect the best interests of children of the family, *i.e.,* the natural or adopted children of each of the parties to the divorce litigation. The statute does not include stepchildren within its scope. The Circuit Court for Prince George's County thus erred in awarding Pamela Bledsoe the use and possession of the dwelling shared by her and Donald Bledsoe when there were no children of the family involved. Accordingly, the judgment of the circuit court is reversed.

> *Judgment of Circuit Court for Prince George's County reversed and case remanded to that Court for further proceedings consistent with this opinion.*
> *Pamela Bledsoe to pay the costs.*