REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2253

September Term, 2011

AARON HARRISON-SOLOMON

v.

STATE OF MARYLAND

Woodward,
Graeff,
Thieme, Raymond G., Jr.
    (Retired, Specially Assigned),

JJ.

Opinion by Graeff, J.

Filed: February 25, 2014

Aaron Harrison-Solomon, appellant, was found guilty of various crimes on two occasions, one pursuant to a plea and the other by a jury. He was found, however, to be not criminally responsible ("NCR"), and he was committed to the Department of Health and Mental Hygiene ("DHMH") for institutional care and treatment. On June 3, 2006, he was released subject to certain conditions, including that he remain on medication and submit to continued monitoring of his mental health.

Several days before the Order of Conditional Release ("OCR") was due to expire, DHMH sought a four-year extension of the OCR, asserting that: (1) appellant had indicated that he intended to stop taking his medication upon his release; and (2) appellant's physician recommended against termination of the OCR. After the date on which the OCR was scheduled to expire, the Circuit Court for Prince George's County granted DHMH's petition. The court subsequently denied appellant's Motion to Alter or Amend.

On appeal, appellant presents one question for our review, which we have rephrased slightly, as follows:

> Where appellant was committed to DHMH pursuant to a NCR finding and subsequently conditionally released, did the circuit court err in extending the OCR for an additional four years when its order issued after the date that the OCR was scheduled to expire?

For the reasons set forth below, we shall affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal relates, not to the facts underlying appellant's convictions, but the extension of the OCR, we need not set forth the facts adduced at trial. *See Washington v. State*, 190 Md. App. 168, 171 (2010). Rather, we briefly will state the

nature of the case, as well as the facts and somewhat complicated procedural history of the case that led to this appeal.

On June 15, 1999, appellant pled guilty to two counts of assault in the second degree in the Circuit Court for Prince George's County, Case No. CT98-0278X. The court determined that he was NCR pursuant to Md. Code (1994 Repl. Vol.) § 12-111 of the Health-General Article ("H.G.") and committed him to DHMH.[1]

---

[1] Maryland Code (1994 Repl. Vol.) § 12-111, at the time, provided:

**Finding of not criminally responsible — Commitment.**

(a) *Commitment.* — Except as provided in subsection (c) of this section, after a verdict of not criminally responsible, the court immediately shall commit the defendant to the Department for institutional, inpatient care or treatment.

(b) *Disposition of mentally retarded.* — If the court commits a defendant who was found not criminally responsible primarily because of mental retardation, the Department shall designate a facility for mentally retarded individuals for care and treatment of the committed individual.

(c) *Exceptions.* — After a verdict of not criminally responsible, a court may order that an individual be released, with or without conditions, instead of committed to the Department, but only if:

(1) The court has available an evaluation report within 90 days preceding the verdict made by an evaluating facility designated by the Department;

(2) The report indicates that the individual would not be a danger, as a result of mental retardation or mental disorder, to self or to the person or property of others if released, with or without condition; and

(3) The individual and the State's Attorney agree to the release and to any conditions for release that the court imposes.

(d) *Inclusion in central computer.* — The court shall notify the central repository of the criminal justice information system of each individual it orders committed under this section.

On March 23, 2000, the court issued an OCR. On December 21, 2001, appellant was indicted for, among other things, robbery, assault, and use of a handgun during the commission of a felony or a crime of violence. The initial OCR was rescinded, and the previous commitment to DHMH was reimposed.

On December 12, 2002, a jury found appellant guilty, but NCR, of robbery and use of a handgun in the commission of a felony or crime of violence. The court again committed appellant to DHMH, at that time pursuant to Maryland Code (2001) § 3-112(a) of the Criminal Procedure ("CP") Article.[2]

On April 25, 2006, an administrative law judge ("ALJ") held a conditional release hearing at Spring Grove Hospital ("Spring Grove"). She recommended that appellant be conditionally released for five years. On July 3, 2006, the circuit court, on review of this recommendation, granted appellant's motion for conditional release.[3]

The court found:

(1)     That [appellant] has a mental disorder; and
(2)     By reason of that mental disorder, [appellant] would not be a danger to himself or to the person or property of others if not confined in an institution for in-patient care of [sic] treatment, but would be such a

---

[2] At the time of appellant's first conviction, Title 12 of the Health-General Article governed "Incompetency and Criminal Responsibility in Criminal Cases." In 2001, it was recodified without substantial change as Title 3 of the Criminal Procedure Article of the Code. *See Bean v. Dep't of Health and Mental Hygiene*, 406 Md. 419, 422 n.1 (2008).

[3] In the order, the court referred only to the 1999 commitment based on the NCR finding, with no mention of the 2002 finding. In a May 18, 2010, ALJ report, discussed in greater detail *infra*, the ALJ stated that, although appellant was found NCR in 2002, he was committed pursuant to the 1999 case, even though records after that date refer to both cases.

danger if released into the community without the special conditions enumerated below.

It ordered that appellant

be conditionally released from [Spring Grove] subject to the following conditions, all of which shall be in effect for five (5) years:

1. [Appellant] shall reside at the Home Run Program[4] . . . and shall follow all of the requirements set forth by the Home Run staff as well as the staff of [Spring Grove]. Thereafter, any change in residence must be approved in writing by the clinicians of the Home Run Program (and [Spring Grove]) as well as the Court, and sent to the DHMH Representative and the Community Forensic Aftercare Program (the "CFAP") prior to change.

2. [Appellant] shall be seen by mental health personnel at the Home Run Program. Should there be any change regarding any other community health program, permission must be obtained consistent with that referenced in paragraph one.

3. [Appellant] shall take psychiatric medication as prescribed by his psychiatrist and other physicians and shall participate in laboratory tests that are ordered for the purpose of monitoring the medication.

The OCR set forth multiple other conditions, including that appellant "shall not take illicit drugs or use alcohol," "shall attend Narcotics Anonymous and/or Alcoholics Anonymous as frequently as directed by his therapist," and "shall not own, possess, or use . . . any firearm or weapon." The OCR further provided:

16. During his period of conditional release, [appellant] shall remain subject to the jurisdiction of the Court, to the general supervision of

---

[4] The Order further specified that, while residing at the Home Run Program, appellant would receive counseling and remain on electronic monitoring through Alert Contemporary Counseling Services, Inc. ("Alert").

DHMH, and to the reasonable requirements of DHMH pertaining to the conditions of release.

17.     If at any time within the five (5) years of conditional release, [appellant] does not comply with any condition of release, the CFAP (Home Run and Mosaic, Inc.) and Alert shall immediately notify the committing court and the Office of the State's Attorney and after a hearing under Md. Code Ann., Crim. Proc. §3-121 (2001) [appellant] may be recommitted to DHMH.

The circuit court entered its order on July 3, 2006, which by its terms was to expire on July 3, 2011.

In 2009, the State petitioned for revocation of the conditional release. The petition listed three reasons: (1) appellant was not following the requirements set forth by his housing provider; (2) he had missed a medication injection; and (3) he went on an unauthorized visit with his mother.

Following an administrative hearing on May 13, 2010, an ALJ issued a report, finding that appellant had violated the conditional release. She noted, however, that appellant's failure to follow rules of the housing program was merely his failure to attend "group grocery and laundry outings." Although the ALJ found that DHMH had met its burden to prove that appellant had violated his conditional release, she nonetheless stated:

> [I]n light of his compliance with treatment and medication since his return to [Spring Grove] and his articulated understanding of the conditions of his release, I recommend that he again be conditionally released. Based on the evidence, I find that [appellant] would not be a danger to himself or others or the property of others if released from confinement subject to . . . conditions, all of which should remain in effect for the remainder of the original five-year conditional release period.

On June 11, 2010, the circuit court ordered that appellant be "conditionally released from confinement subject to [certain enumerated] conditions all of which shall be in effect for the remainder of the original five-year conditional release period." These conditions included, among other things, that appellant receive substance abuse and mental health treatment, and that he follow the recommendation of his mental health treatment provider, including taking prescribed medication.

On June 28, 2011, less than a week before the expiration of appellant's conditional release, DHMH filed an Application for Extension of Conditional Release, requesting that appellant's conditional release be extended for four years, until July 3, 2015. It attached an evaluation from a doctor who recommended against termination of the conditional release because appellant "ha[d] not developed any insight into [the] role of medication maintaining psychiatric stability," and he had "announced his intention to abandon psychiatric treatment so that his mind can be free to think."

The record does not reflect any opposition to the Motion. On August 30, 2011, the circuit court issued an order extending the OCR "for an additional term of four (4) years to expire on July 3, 2015."[5]

---

[5] The August 2011 Order stated that it was extending the OCR dated June 11, 2010. The June 11, 2010, order, however, reinstated the July 3, 2006, OCR, which was to expire on July 3, 2011. Thus, the Order entered on August 30, 2011, added four years to the expiration date of the original OCR, making July 3, 2015, the expiration date.

On September 13, 2011, appellant filed a Motion to Alter or Amend pursuant to Maryland Rule 2-534. He argued that the court's jurisdiction over him ended on July 3, 2011, upon expiration of the original term of the OCR.[6] DHMH argued that it filed the Application for Extension of Conditional Release on June 28, 2011, while the court had jurisdiction, and the court retained jurisdiction until it ruled upon that application.[7]

The court agreed that it retained jurisdiction, noting that, when DHMH applied for the extension, it was the middle of summer, and there were logistical difficulties reaching all parties that made it impracticable for the court to have ruled on the application before the expiration of the OCR. It further noted that CP § 3-122 is "silent as to any statutory limits on the filing of applications as well [as] any prescribed time in which the [c]ourt must consider them." The court rejected appellant's argument that this case was analogous to a probation violation, where the court loses jurisdiction over a defendant if no violation occurs within the period of probation. The court stated that "public safety concerns and concerns for the safety of the committed individual makes a conditional release from commitment very

[6] This motion is not in the record, but it is listed in the docket entries, and the circuit court considered it at the hearing.

[7] DHMH also filed a Motion to Dismiss, arguing that appellant failed to file a timely Motion to Alter or Amend, which was due on September 9, 2011, but was not docketed until September 13, 2011. The circuit court rejected that contention, noting that the court was closed on Thursday and Friday, September 8-9, 2011, due to Tropical Storm Lee, and the clerks' office was "extremely backed up" the following Monday and Tuesday, September 12-13 due to flooding. The court found that the Motion to Alter or Amend was timely filed on September 12, 2011, although it was not entered on the docket until September 13, 2011. DHMH does not challenge that factual finding on appeal.

-7-

different from the release of a person who has been convicted of a crime or convicted and released from prison." It explained:

> While the fear of additional punishment is the motivation behind probation, the public safety and an individual's likelihood to harm himself are the motivations behind confining a person or of restricting a person who has been deemed not criminally responsible to [DHMH].

> It follows therefore, that the Legislature could not have intended jurisdiction over the conditional release of a committed individual to expire the same way that jurisdiction over an individual who is simply being punished can expire. There are different objectives of these two different forms of supervised release. They cannot be met with the application of such broad limitation, period.

> Nevertheless, [DHMH] submitted their request in a timely fashion upon receiving the report . . . that indicated that [appellant's] intention to cease taking his medication upon expiration of his period of conditional release. That the Court waited until the conditional release period had expired [] is of no consequence.

Accordingly, the trial court denied appellant's Motion to Alter or Amend. This timely appeal followed.

**STANDARD OF REVIEW**

Appellant challenges the circuit court's denial of his motion to alter or amend the order extending the OCR. We review the trial court's decision on a Motion to Alter or Amend for an abuse of discretion. *Miller v. Mathias*, 428 Md. 419, 438 (2012); *RRC Northeast, LLC v. BAA Maryland, Inc.*, 413 Md. 638, 673 (2010). We note, however, "that trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature." *Wilson-X v. Dep't of Human Res.*,

403 Md. 667, 675 (2008). If the court fails to consider the proper legal standard, that constitutes an abuse of discretion. *Miller*, 428 Md. at 438. To the extent that our decision involves issues of statutory interpretation and questions of law, our review is *de novo*. *Moore v. State*, 388 Md. 446, 452 (2005).

## DISCUSSION

Appellant contends that the trial court was not authorized to extend the OCR after it expired on July 3, 2011. He argues that the court's order of August 28, 2011, "was more akin to 'reviving' the [OCR], rather than 'extending' it, and CP § 3-122 by its express terms does not authorize the court to take that action after the original [OCR] has expired." He analogizes his situation to that of a criminal defendant whose probationary term has expired, asserting that "the court's power to take action after the court's jurisdiction ends" is limited to when a violation of a condition of release occurs during the time the conditional release is still in effect. Thus, appellant argues, because he committed no violation of the OCR prior to its expiration, the circuit court lacked jurisdiction to extend it after July 3, 2011.

The State disagrees. It contends that the statute does not impose a time limit on an application to extend conditional release or the court's ruling. It argues that "the circuit court properly granted the motion to extend an [OCR] that was filed five days prior to the expiration of the order." It asserts that appellant's construction of the statute is unreasonable because it would produce an anomalous result: two similarly-situated defendants could have different outcomes where the State has timely filed a petition for revocation of conditional

release if one was ruled on the day before expiration of an OCR but the other one was ruled on after its expiration. The State points out that the latter defendant could escape the consequences of the OCR simply because of court delays – even if by a day – under appellant's interpretation of the statute.

Before addressing the issue presented here, whether the circuit court had the authority pursuant to CP § 3-122 to extend appellant's conditional release, we briefly discuss the statutory scheme set forth in Title 3 of the Criminal Procedure Article, entitled "Incompetency and Criminal Responsibility in Criminal Cases." CP § 3-109 provides that a defendant may be deemed "not criminally responsible" for his criminal acts "if, at the time of [his] conduct, the defendant, because of a mental disorder or mental retardation, lacks substantial capacity to: (1) appreciate the criminality of that conduct; or (2) conform that conduct to the requirements of law." CP § 3-112 provides that, with limited exceptions not relevant here, when a verdict of NCR is rendered, the court shall commit the defendant to DHMH for treatment. Unlike the disposition of a criminal trial, there is no requirement that commitment have a specific end point. Rather, a committed person may become eligible for release if he or she meets his burden to establish eligibility for discharge (if the person is no longer a danger to self or others) or "conditional release" (if the person would not be a danger to self or others if released from confinement with conditions imposed by the court). CP § 3-114; *Byers v. State*, 184 Md. App. 499, 506-07 (2009). *See also Anderson v. Dep't of Health & Mental Hygiene*, 310 Md. 217, 222 (1987) (commitment "continues indefinitely

-10-

until the criminal defendant prevails at an administrative proceeding or a judicial release hearing or obtains a writ of habeas corpus"), *cert. denied*, 485 U.S. 913 (1988).[8]

Section 3-122, the statute at issue here, addresses a request for a change in conditional release, as follows:

> (a) *In general.* — (1) An application to the court for a change in conditional release of a committed person may be made by:
> > (i) [DHMH] or the State's Attorney at any time;
> > (ii) the committed person not earlier than 6 months after the court ordered the conditional release, unless the court for good cause permits an earlier application.
> > (2) The applicant for a change in conditional release shall notify the court and other parties, in writing, of the application and the reasons for the requested change.

---

[8] In *Byers v. State*, 184 Md. App. 499, 507-08 (2009), this Court throughly discussed the legislative history of Title 3, noting that the statute was revised in 1984, after the Governor created a Task Force to Review the Defense of Insanity following John Hinckley's attempted assassination of President Ronald Reagan. *Accord Anderson v. Dep't of Health & Mental Hygiene*, 64 Md. App. 674, 681 (1985), *rev'd on other grounds*, 310 Md. 217 (1987). Significant revisions, which included an automatic commitment requirement upon a finding of NCR and putting the burden on the defendant to prove his eligibility for release, were deemed necessary to deal with "problems with commitment and release of insanity defendants" due to

> more liberal policies [in the area of treatment that] have made it more difficult for the State to continue confinement of a patient who, although suffering from mental illness, is not a danger to self or others. The Task Force therefore recommends legislative action that will at least make clear that individuals committed as . . . not criminally responsible are a different class from other mental patients.

Governor's Task Force To Review the Defense of Insanity, *Report to the Governor* at 9 (1984) ("Task Force Report"). Another recommendation was to permit the court to extend a conditional release for an additional term of 5 years. Task Force Report at 31.

(b) *Burden of proof.* — The burden of proof of any issue raised by the application for change in conditional release rests with the applicant.

(c) *Court action.* — After the court considers the application for change in conditional release and the evidence, in accordance with § 3-114 of this title, the court shall:

    (1) change the conditions;

    (2) impose appropriate additional conditions;

    (3) revoke the conditional release;

    (4) continue the present conditions of release; or

    (5) extend the conditional release by an additional term of 5 years.

(d) *Reapplication.* — (1) Not earlier than 1 year after the court action on the application for change filed by the committed person, and not more than once a year thereafter, a committed person may reapply for a change in conditional release.

    (2) Notwithstanding the time restrictions in paragraph (1) of this subsection, a committed person may apply for a change in conditional release at any time if the application is accompanied by an affidavit of a physician or licensed psychologist that states an improvement in the mental condition of the committed person.

In determining the scope of the court's authority pursuant to § 3-122, we must apply well-settled rules of statutory interpretation, as follows:

> In statutory interpretation, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules. We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If, however, the language is subject to more than one interpretation, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute. When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the purpose, aim, or policy of the enacting body, and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

*In re: Joy D.*, ___ Md. App. ___, No. 693 Sept. Term, 2013, slip op. at 20 (filed Jan. 29, 2014) (quoting *State v. Phillips*, 210 Md. App. 239, 259-60 (2013)). "When interpreting an ambiguous statute, we must reject any construction that would be illogical or nonsensical." *Davis v. State*, 426 Md. 211, 218 (2012).

The issue here is whether, when an application for a change in an OCR is filed before its expiration, the court retains jurisdiction to rule on the application after the original term of the OCR is scheduled to expire. As the circuit court noted, the statute does not contain any time limit on when the court is required to rule on an application for a change in conditional release.[9] It does state, however, that after an application is filed, the court "shall" take one of the actions set forth in CP § 3-122, including extending the OCR.

We recently discussed the use of the word "shall" in a statute:

> The use of the word "shall" is significant; it "ordinarily indicates a mandatory intent, unless the context of the statute indicates otherwise." *Burch v. State*, 358 Md. 278, 284 (2000). *Accord Perez v. State*, 420 Md. 57, 63 (2011) ("'When the Legislature commands that something be done, using words such as "shall" or "must" rather than "may" or "should," the obligation to comply with the statute or rule is mandatory.'") (quoting *State v. Green*, 367 Md. 61, 82 (2001)). *Miller v. City of Annapolis Historic Preservation Comm'n*, 200 Md. App. 612, 639-40 (2011) (Shall requires a particular course of action, and accordingly, it is mandatory.).

*In re: Joy D.*, slip op. at 21.

---

[9] We note that an earlier proposed version of § 3-122(c) did include a requirement that the court rule on an application for change in conditional release "within 10 days after the court receives the report." *See* Task Force Report at 31. That time frame was removed in the final version.

Pursuant to the language of the statute here, the circuit court *shall* rule on a filed application; it is required to rule on the application, without any time requirement. Thus, the plain language of the statute indicates that the court has jurisdiction over the OCR until it rules on the application. Therefore, as long as an application is filed before the expiration of the conditional release term, the court retains jurisdiction over the case and may extend the term of conditional release, even if the order is issued after the OCR otherwise would have expired.[10]

The Illinois Appellate Court similarly construed its conditional release statute. In *People v. Maglio*, 923 N.E.2d 866, 867 (Ill. App. Ct. 2010), the defendant was charged with murder and found not guilty by reason of insanity. Approximately five years later, he was granted conditional release for a period of five years, to expire on January 9, 2009. *Id.* at 867-68. On December 26, 2008, two weeks before expiration of the term of conditional release, the State filed a petition "requesting an evidentiary hearing regarding defendant's mental health and a determination as to whether to extend defendant's term of conditional release for an additional five years" under the applicable statute.[11] *Id.* at 868. The court held

___

[10] In a situation where an application is not filed within the term of conditional release, however, once the OCR expires, the court no longer would have jurisdiction to extend it.

[11] Although the Illinois statute differs in form from Maryland's, it is similar in substance to ours. The relevant portion of its statute provides:

[A] conditional release shall be for a period of five years. However, the defendant . . . may petition the Court for an extension of the conditional release period for an additional 5 years. Upon receipt of such a petition, the Court

(continued...)

-14-

a hearing on January 5, 2009, and agreed to stay the conditional release date by one day, until January 10, 2009, to allow the parties to argue the merits of the petition. *Id.* At a subsequent hearing on January 9, 2009, when the State asked to have the defendant examined by a psychiatrist, the court denied the State's petition, reasoning that the conditional release period had ended "by term of law." *Id.* It subsequently denied the State's motion to reconsider, stating that "my jurisdiction is over." *Id.*

On appeal, the court reversed, determining that, because the State had filed its petition before expiration of the term of conditional release, the trial court had jurisdiction until it was adjudicated. *Id.* at 869-70. It noted that the applicable statute provided that, after a petition for an extension of an OCR was filed, "the court shall hold a hearing" and "shall enter an order either extending the defendant's period of conditional release for an additional 5-year period or discharging the defendant." *Id.* The court found that, pursuant to this clear statutory language, because the State filed its petition prior to the expiration of defendant's conditional release, the court retained jurisdiction over the defendant until the petition was adjudicated. *Id.*

---

[11](...continued)
shall hold a hearing . . . [and] shall determine whether the defendant should continue to be subject to the terms of conditional release, and shall enter an order either extending the defendant's period of conditional release for an additional 5 year period or discharging the defendant.

730 Ill. Comp. Stat. 5/5-2-4(a-1)(D) (2007 & 2012 Supp.).

As indicated, we agree with this analysis. Indeed, it would defy common sense to hold that the court does not retain jurisdiction to rule on a timely filed application to modify a defendant's conditional release. When DHMH discovers reason to extend an OCR toward the end of the conditional release period, such as here, where it received a doctor's report recommending that the OCR not be terminated due to appellant's stated intent to stop his medication as soon as he was released, it may not be feasible to rule on the application prior to the scheduled expiration of the OCR. That alone should not prevent an extension of the OCR. *See generally Donaldson v. State*, 305 Md. 522, 529 (1986) ("[A] probationer violating a condition on the final day of his probationary period would have to be brought to court on that very day, or never at all. Clearly, such a scenario was not intended by the legislature.").

Appellant contends, however, that we should construe this case in the same way as we construe probation violation cases. He urges us to hold "that this court's power to take action after the court's jurisdiction ends" is limited to situations where there is a violation of the OCR during the time the conditional release is still in effect. We are not persuaded.

In *State v. Berry*, 287 Md. 491, 494 (1980), the circuit court revoked Berry's probation based on the State's petition alleging a violation of probation, which was filed three days before the probationary period expired. Because Berry was not served with the warrant that issued until over two years after the expiration of the probationary period, this Court reversed, holding that the trial court lacked jurisdiction after the end of the probationary

period.  *Id.*  The Court of Appeals disagreed.  Noting that it needed to "carry out the actual intention of the legislature," *id.* at 495, and that "sound public policy" required permitting the court to revoke probation even after the probationary period is over, *id.* at 498, it held that the "date of the alleged violation of probation is determinative," *id.*, and as long as that date fell inside the probationary period, the court could revoke probation.  *Id.* at 499.  *Accord State v. Miller*, 289 Md. 443, 446 (1981) (probation may be revoked after expiration of probation period based on violation committed before expiration, although the State must proceed with "reasonable promptness and diligence" to prosecute after expiration).

In *Carter v. State*, 193 Md. App. 193, 202 (2010), by contrast, the defendant did not commit a violation within the probation period.  Rather, there was a dispute over the proper amount of restitution owed by Carter to the victim of an assault, and the court, two months after Carter's term of probation expired, ordered that Carter's probation be extended so he could make further restitution.  *Id.*  We held that, because Carter had complied with all the conditions of probation, the court was without authority to extend probation once it had expired.  *Id.* at 214-15.

These probation violation cases support a holding that a court has jurisdiction after expiration of an OCR if the person violated the conditions of release during the time the OCR was in effect.  It does not follow, however, that this is the only situation when the court retains jurisdiction after the expiration of an OCR.

-17-

As appellant acknowledges, the Court of Appeals has made clear that there are significant differences between a mental health patient on conditional release and a convicted criminal on probation:

> Parole and probation are essentially a product of punitive sanctions imposed for the commission of a criminal act. . . . Conditional release, however, is not a tool of the penal system. Rather, it is a therapeutic release of a mentally ill individual from a psychiatric hospital as part of a continuing course of treatment.[] The deprivation of liberty involved in the initial hospitalization or in re-hospitalization clearly is not imposed as a punishment. "[T]he test for the release of a person committed to a mental institution is whether the patient if released would be a danger to the welfare of himself or society as a whole."

*Bergstein v. State*, 322 Md. 506, 515-16 (1991). Given the safety concerns to the individual and society when an OCR is at issue, the probation cases are not dispositive of the present case.

For all of the reasons stated, we hold that, as long as an application for a change in conditional release is filed before the expiration of the conditional release term, the court retains jurisdiction over the case and may extend the term of conditional release, even if the order is issued after the OCR otherwise would have expired.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**