*Eric Antonio Alarcon-Ozoria v. State of Maryland*, No. 4, September Term 2021. Opinion by Hotten, J.

**CRIMINAL LAW – DISCOVERY – MANDATORY DISCLOSURE**

The Court of Appeals held that the scope of the mandatory obligation of the State to disclose materials to the defense without request does not extend to materials held by a state correctional facility, which is not within the ambit of control by the State, does not regularly report to the State's Attorney, and did not report to the State's Attorney in the instant case. Maryland Rule 4-263(c)(2) obligates the State to disclose materials that "are in the possession or control of the [State's] attorney, members of the [State's] attorney's staff, or any other person who either reports regularly to the [State's] attorney's office or has reported to the [State's] attorney's office in regard to the particular case." In the instant case, the State requested and received recordings from a state correctional facility of inmate phone conversations made by Petitioner. The state correctional facility is a distinct entity from the State's Attorney and did not participate in the investigation or prosecution of the defendant. Therefore, the scope of mandatory disclosure of discoverable materials did not extend to the correctional facility.

**CRIMINAL LAW – DISCOVERY – DUE DILIGENCE**

The Court of Appeals held that the State did not violate its obligation of due diligence by providing jail call recordings of statements made by Petitioner on the morning of trial. Maryland Rule 4-263(c)(1) obligates the State to exercise due diligence in identifying "all of the material and information that *must* be disclosed under this Rule." (Emphasis added). The obligation for due diligence was not triggered until the State received approximately 200 jail call recordings three days before trial. The State did not violate its due diligence obligations by reviewing the recordings over the weekend and providing Petitioner with a select group of twelve recordings that it may have used as impeachment evidence and one recording used in its case-in-chief.

**CRIMINAL LAW – DISCOVERY – HARMLESS ERROR**

Assuming *arguendo* that the State violated its discovery obligations by providing jail call recordings to Petitioner on the morning of trial, the Court of Appeals held that the error was harmless beyond a reasonable doubt. The Court held in *Thanos v. State*, 330 Md. 77, 622 A.2d 727 (1993), that assuming the State violated Md. Rule 4-263 by surprising the defendant with three witnesses before trial, "any error in the State's discovery violations was harmless" given the existence of corroborating evidence. *Id.* at 97, 622 A.2d at 736. Similar to the corroborating evidence in *Thanos*, the State provided additional evidence to establish consciousness of guilt independent of the jail call recordings, including a text message exchange, witness testimony, forensic evidence, a 911 call recording, pictures, and video footage of the incident. Therefore, the Court concluded any error was harmless.

Circuit Court for Montgomery County
Case No. 135035C
Argued: September 14, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 4

September Term, 2021

_____

ERIC ANTONIO ALARCON-OZORIA

v.

STATE OF MARYLAND

_____

Getty, C.J.,
McDonald,
Watts,
Hotten,
Booth,
Biran,
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Hotten, J.
Watts, J., dissents.
Adkins, J., concurs.

_____

Filed: December 21, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from a shooting outside a restaurant in Silver Spring, Maryland shortly after 1:00 a.m. on June 9, 2018. Witnesses and security camera footage identified two suspects involved in the shooting. Following an anonymous tip, law enforcement identified one of the men as Ruben Gilbert. Law enforcement obtained a search warrant for Mr. Gilbert's cell phone and gathered evidence implicating Eric Alarcon-Ozoria ("Petitioner") as the other person involved in the shooting.

Petitioner was charged with assault in the first-degree, use of a firearm in the commission of a crime of violence, and illegal possession of a firearm after a felony conviction. Mr. Gilbert was charged as a co-conspirator, but the State entered a *nolle prosequi* disposition in June 2019. Petitioner's jury trial was scheduled for Monday, August 5 through Thursday, August 8, 2019 in the Circuit Court for Montgomery County.

On the morning of August 5 before trial, the State shared with defense counsel for the first time approximately 200 jail call recordings of conversations between Petitioner and Mr. Gilbert. The State had requested recordings of calls made by Petitioner from a state correctional facility on Wednesday, July 31, and received the calls on Friday, August 2. The State reviewed the recordings over the weekend, and on Sunday, August 4, requested additional recordings of any outgoing calls from the jail to Mr. Gilbert's phone. At 6:00 a.m. on Monday, August 5, the correctional facility provided one additional recording of a jail call between Mr. Gilbert and a person originally identified as another inmate but later identified as Petitioner. During an on-the-record chambers conference, the State identified twelve recordings received on Friday, August 2 that it might use for

impeachment purposes and the one recording received Monday, August 5 that it said it planned to use in its case-in-chief.

Over objection of defense counsel, the circuit court admitted the jail call recordings with the State's assurance that it would not use the recordings in its case-in-chief or as impeachment evidence until the second day of trial, to give defense counsel time to review the recordings.

The jury convicted Petitioner of illegal possession of a firearm. The circuit court sentenced Petitioner to fifteen years' imprisonment, with all but twelve years suspended and upon release five years of supervised probation. Petitioner timely appealed to the Court of Special Appeals, which affirmed.

We granted *certiorari* on April 9, 2021 to address the following questions:

1. Does the State's obligation to exercise due diligence in identifying and disclosing relevant materials in criminal litigation extend to phone call recordings collected and preserved by the State's jail facilities?

2. In a criminal case, does a recording of a defendant's own statement that is not disclosed until the morning of trial constitute an unfair surprise to the defense, such that it requires relief?

We answer both questions in the negative and shall affirm the judgment of the Court of Special Appeals.

## FACTS AND PROCEDURAL BACKGROUND

### The Underlying Incident

On June 9, 2018, a shooting occurred outside Abyssinia, an Ethiopian restaurant in downtown Silver Spring, Maryland. The shots occurred in a nearby and "heavily populated[]" alleyway by the outdoor side patio bar. No one was injured. The restaurant

2

had an outdoor surveillance camera facing the alleyway, but the view of the shooting was blocked by restaurant awnings.

Amir Abdella, the manager of Abyssinia, heard the first gunshot and turned to see a person running away, followed by the shooter, later identified as Petitioner, holding a gun pointed towards the victim running away. A second man, who was later identified as Mr. Gilbert, walked behind the shooter. Mr. Abdella testified that he was only five to six feet away when he watched the shooter fire a second shot at the person running away. He heard a third shot, but did not see it.

Mr. Abdella testified that he saw the shooter and the second man earlier sitting together in the restaurant. He recognized these men because they sat with a group of women not eating or drinking and "saw the discomfort of the [women.]" He eventually called security to ask them to leave. Mr. Abdella provided to law enforcement security footage depicting the two men sitting together at a table and identified one of the men as Petitioner. Mr. Abdella described the shooter at trial, but admitted that he might not be able to identify the shooter again if he saw him.[1] At least one other witness, Christopher Parkes, a security guard at the adjacent Kaldi's Social House restaurant, heard multiple gun shots and saw muzzle flashes followed by people scattering in the alleyway. A firearms

---

[1] The description of the shooter provided by Mr. Abdella at trial contradicted, in part, his description of the shooter made during the initial 911 call. During trial, he testified that the shooter was 5'8" wearing a white shirt and black pants, but during the 911 call, he described the shooter as about 5'1" or 5'2" and wearing a white shirt with a black logo, black pants, and black sneakers.

expert corroborated the testimony of Mr. Parkes and opined that the two collected shell casings came from the same weapon.

The State also produced another nearby restaurant surveillance video that depicted the two suspects: a taller man and a shorter man holding a gun. On July 30, law enforcement issued a press release seeking the public's help in identifying the two men involved in the shooting. An anonymous tip identified the taller man as Mr. Gilbert. Law enforcement compared the Motor Vehicle Administration photo of Mr. Gilbert with the surveillance footage and determined they were the same person. Law enforcement obtained a search warrant of Mr. Gilbert's phone and found the following text conversation between Mr. Gilbert and Petitioner:

> [Petitioner:] Is dere a camera At dat lil side bar[?]
> [Petitioner:] And Erin just asked me bout you[.]
> [Mr. Gilbert:] Tell her hit me[.]
> [Mr. Gilbert:] N id[]k we Gucci doe babe[.]

This text exchange occurred approximately one hour after the shooting. According to the detective assigned to the case, the "[s]idebar" referred to Abyssinia's outdoor side patio bar in the alleyway—"the only [s]idebar in this entire area." The detective also explained that the phrase "we Gucci" is slang for "we're good."

Law enforcement executed an arrest warrant for Petitioner and Mr. Gilbert. Officers seized clothes in the home of Petitioner consistent with those worn by the shooter in the surveillance video. The Grand Jury for Montgomery County indicted Petitioner on charges of assault in the first-degree, use of a firearm in the commission of a crime of violence, and illegal possession of a firearm after a felony conviction. A jury trial was scheduled for

4

August 5 through August 8, 2019 in the circuit court. Mr. Gilbert was charged as a co-conspirator, but a *nolle prosequi* disposition was entered for Mr. Gilbert in June 2019.

**Legal Proceedings**

**A.    Discovery**

On January 23, 2019, defense counsel filed a discovery request, "in accordance with Maryland Rule 4-263:[2] . . . [for all] material and information *in the possession or control of the State's Attorney . . .* and any others who have participated in the investigation or evaluation of the case and who either regularly report or, with reference to the particular case, have reported to the State's Attorney of his/her office." (Emphasis added). The purpose of the request was to "obtain disclosure of material and information to the fullest extent *authorized* and *directed* by Maryland Rule 4-263[.]" (Emphasis added). On May 15, 2019, defense counsel requested additional discovery pursuant to the State's

---

2 Maryland Rule 4-263(c) provides:

**(c) Obligations of the Parties.**

(1) *Due Diligence*.  The State's Attorney and defense shall exercise due diligence to identify all of the material and information that must be disclosed under this Rule.

(2) *Scope of Obligations*.  The obligations of the State's Attorney and the defense extend to material and information that must be disclosed under this Rule and that are in the possession or control of the attorney, members of the attorney's staff, or any other person who either reports regularly to the attorney's office or has reported to the attorney's office in regard to the particular case.

**Cross reference:** For the obligations of the State's Attorney, see *State v. Williams*, 392 Md. 194[, 896 A.2d 973] (2006).

*obligations* under the Maryland Rules and *State v. Williams*, 392 Md. 194, 896 A.2d 973 (2006), for any "recordings . . . or other materials concerning any . . . statements made by" Mr. Gilbert or Petitioner.

The State assured defense counsel that it would "open its evidentiary file" so defense counsel could see the State did not possess any "written statements by any witnesses otherwise not provided." The State also assured the circuit court about its good faith compliance with discovery obligations: "I think it's important that the Court know that we have met with counsel. . . . Open file discovery is the policy of my office, and open file discovery has been the practice in this case. We have met no less than two times . . . where we've gone through the file to make sure everything in counsel's file reflects everything in the State's file[.]" The circuit court acknowledged the two parties' cooperation during a status hearing on July 25, 2019: "I appreciate counsel working together as you obviously are doing to try to work out as many of these issues as you can."

On July 26, the State disclosed additional evidence that it intended to introduce. The evidence was an activity log, gathered from Mr. Gilbert's cellular phone, that purportedly counted Mr. Gilbert's steps during different time frames on the night of the shooting. Defense counsel moved to exclude the evidence as untimely and non-compliant with Md. Rule 4-263(c). On July 31, the circuit court agreed with defense counsel that the evidence should be excluded, but not because of a bad faith or unduly late disclosure on behalf of the State. The circuit court found the disclosure unfair to the defense under the circumstances "given that the parties had reached an agreement on . . . the scope of the

6

information that would be used from the cell phone [seized from Mr. Gilbert]." The activity log exceeded the scope of the parties' stipulation and was excluded.

On July 31, in preparation for trial, the State requested from Mr. Amando Gomes, an employee at the Montgomery County Correctional Facility, any recordings of jail calls made by Petitioner as an inmate at the correctional facility. Counsel for the correctional facility delivered 201 jail call recordings to the State's Attorney on Friday, August 2. The assigned prosecutor took them home over the weekend and began reviewing the calls on Saturday, August 3.

The recordings contain calls made by Petitioner from December 19, 2018 to August 1, 2019. Petitioner first made a call to Mr. Gilbert on April 15, 2019 and subsequently called Mr. Gilbert "no less than 12 times." The last call Petitioner made to Mr. Gilbert occurred on July 16, 2019. Each call lasted approximately twenty minutes.

The State characterized most of the conversations as "sundry discussi[on]" and devoid of a "smoking gun in terms of [']I did this.[']" A few of the conversations discussed the case and referenced the unwillingness of Mr. Gilbert to provide testimony. The "State was concerned at the potential of suborning perjury and obstruction of justice. . . ." The State concluded that it would not use these calls in its case-in-chief, but could use some of them for impeachment if Mr. Gilbert testified.

The State emailed Mr. Gomes on Sunday, August 4, requesting a backwards search of Mr. Gilbert's phone number to identify any jail calls made to his phone. Mr. Gomes replied via email at 6:00 a.m. on Monday, August 5 with one jail call made to Mr. Gilbert on April 2 ("the April 2 call") from the account of another detainee with the last name

7

Pinto.[3]  In the April 2 call, Mr. Gilbert answered the phone and asked if the person calling was named "Sosa"—a nickname used by Petitioner.  Petitioner answered in the affirmative and they proceeded to discuss the case over the course of a fifteen-minute conversation.

The State shared the call recordings with defense counsel at the courthouse on the morning of August 5.  During an on-the-record chambers conference, the State identified twelve calls between Petitioner and Mr. Gilbert that could be used to impeach Mr. Gilbert during his testimony.  The State also proffered the April 2 call between Mr. Gilbert and Petitioner to use in its case-in-chief.  While the call was made through another inmate's PIN number, the State explained that the call was between Petitioner and Mr. Gilbert.

Defense counsel objected to the proposed evidence as untimely and requested a one-day continuance.  The State argued that Petitioner waived any right to challenge the call because he attempted to conceal it using another inmate's PIN number.  The State offered to withhold reference to the recordings in its opening statement and not to call Mr. Gilbert until the second day of trial because "the State certainly d[i]dn't want to catch [defense counsel] by surprise."  The State also asked the circuit court and defense counsel to "understand the predicament the State is bound in when [it's] listening to calls of obstruction of justice within this trial.  And then [it] learn[s] of a call that was made by the defendant that was hidden and was [not] meant to be [] found which [the State] found."

---

[3] Each inmate at Montgomery County Correctional Facility receives an individual personal identification number ("PIN") to make outgoing calls.

The circuit court did not rule on whether the State violated its discovery obligations, but denied the request for continuance. The circuit court articulated its belief that defense counsel would have an opportunity to review the April 2 call by the second day of trial.

## B. The Trial

The State neither mentioned the April 2 call during its opening statement, nor called Mr. Gilbert as a witness on the first day of trial. In addition to Mr. Gilbert's testimony, the State called thirteen witnesses, consisting of civilians, members of law enforcement, and forensic experts. The State also presented fifty-eight exhibits, including three surveillance videos from nearby establishments. When the State called Mr. Gilbert, on the second day of trial, he testified that he was friends with Petitioner, and they were together at Abyssinia on the night of the shooting. He testified that the surveillance video depicted him and Petitioner, but that he did not see Petitioner with a gun, nor did he see Petitioner fire any shots.

Over a renewed objection from Petitioner, the State introduced the jail call recording:[4]

> Mr. Gilbert: Who is this, is this Sosa?
> [Petitioner]: Yeah, yeah.
>      \*\*\*
> [Petitioner]: I said I'm trying to figure something out []. . . .
> Mr. Gilbert: Uh-huh. It's still looking like nothing going, man. . . . So, I ain't worried about this, get you back on the brick, bro.
> [Petitioner]: Yeah, yeah. []. . . .
>      \*\*\*
> Mr. Gilbert: []. Sorry, I'm trying to get you situated. . . . I feel like you were with that bitch. And that bitch was fucking with (unintelligible). . . . It was her or somebody close to us.

---

[4] This excerpt of the recording omits numerous lines of unintelligible dialogue.

Mr. Gilbert: I ain't done nothing.
[Petitioner]: Shut up.
Mr. Gilbert: Hey, I don't.  That's how it is bro.  That's how I'm going to be, you feeling me? . . . There wasn't no problem when you did that.
[Petitioner]: Yeah.

Mr. Gilbert confirmed that the call was between him and Petitioner, even though the call was made using the PIN number of another inmate.

At the close of evidence, the circuit court granted judgment of acquittal as to first-degree assault and use of firearm in a crime of violence.  The jury convicted Petitioner of illegal possession of a firearm.  The circuit court sentenced Petitioner to fifteen years' imprisonment, with all but twelve years suspended, and upon release five years of supervised probation.

## C.    The Court of Special Appeals

The Court of Special Appeals affirmed the circuit court in an unreported opinion. *Alarcon-Ozoria v. State*, No. 2149, Sept. Term, 2019, 2020 WL 7706980 (Md. Ct. Spec. App. Dec. 29, 2020).  The Court reached the merits of the discovery violation, even though the circuit court did not find a discovery violation, and Petitioner failed to insist upon a ruling "as he is required to do[.]" *Id.* at *5.  In the absence of a "specific finding as a matter of law that the State violated the discovery rule," the Court "exercise[d] independent *de novo* review to determine whether a discovery violation occurred[.]" *Id.* (quoting *Williams v. State*, 364 Md. 160, 169, 771 A.2d 1082, 1087 (2001)).

The Court concluded that the State did not violate its discovery obligations.  *Id.* at *6.  According to the Court, the disclosure of the jail call recordings did not violate Md.

Rule 4-263 because the State did not have an underlying obligation to seek or obtain the jail call recordings. *Id.* The Court explained, "the State was not under a duty to disclose materials that it did not have." *Id.* The Court rejected the argument that the State had an obligation to seek the records at any point prior to trial. *Id.*

The Court also found that the State exercised due diligence. According to the Court, "[i]t is significant that [Petitioner] attempted to conceal the call by using another inmate's phone number to make the call, and we agree that [Petitioner] cannot claim unfair surprise" when Petitioner was "an active concealer." *Id.*

Finally, the Court found that the State was sufficiently prompt in providing the recordings to Petitioner. The State shared the recordings after having an opportunity to review the materials over the weekend. The circuit court did not abuse its discretion, according to the Court, by declining to continue the case for a day. *Id.* The circuit court fashioned an appropriate remedy by allowing the State to refrain from mentioning the recording in its opening statement and to delay calling Mr. Gilbert so Petitioner could review the recording. *Id.*

Petitioner timely filed a petition for *certiorari*, which this Court granted on April 9, 2021. *Alarcon-Ozoria v. State*, 474 Md. 220, 253 A.3d 1076 (2021).

## DISCUSSION

### Standard of Review

The circuit court is vested with broad discretion in administering discovery. *Williams v. State*, 416 Md. 670, 698, 7 A.3d 1038, 1054 (2010). Therefore, this Court "reviews for abuse of discretion a [circuit] court's decision to impose, or not impose a

11

sanction for a discovery violation." *Dackman v. Robinson*, 464 Md. 189, 231, 211 A.3d 307, 332 (2019) (citing *Beka Indus., Inc. v. Worcester Cty. Bd. of Educ.*, 419 Md. 194, 232, 18 A.3d 890, 913 (2011)).

If the circuit court "made no specific finding as a matter of law that the State violated the discovery rule, we exercise independent *de novo* review to determine whether a discovery violation occurred." *Williams*, 364 Md. at 169, 771 A.2d at 1087.

We review any discovery violation for harmless error. *Johnson v. State*, 360 Md. 250, 269, 757 A.2d 796, 806 (2000); *Green v. State*, 456 Md. 97, 165, 171 A.3d 1162, 1201 (2017) ("Having established that the State violated [Md.] Rule 4-263[] . . . we must next inquire as to whether the error was harmless."). "If the trial judge erred because the State did in fact violate the discovery rule, we consider the prejudice to the defendant in evaluating whether such error was harmless." *Williams*, 364 Md. at 169, 771 A.2d at 1087 (citation omitted).

### The Contentions of the Parties

Petitioner contends that the State violated its discovery obligations by producing jail call recordings on the morning of the trial. According to Petitioner, the State had a mandatory and automatic obligation to disclose the jail call recordings without delay or request pursuant to Md. Rule 4-263. This obligation extended to material in the possession or control of the correctional facility because, according to Petitioner, the State exercised a supervisory relationship over the facility.

Petitioner argues that the supervisory relationship can be demonstrated by the State's direct and informal access to materials held by the correctional facility. The State

12

received the recordings within 48 hours of an email request, and the recordings were "hand-delivered" to the State's Attorney's Office. According to Petitioner, private counsel would need to wait at least nine days pursuant to Md. Rule 4-265(d)[5] before a subpoena request for jail call recordings would be enforceable.

Because the jail call recordings were purportedly under the constructive possession and control of the State, Petitioner asserts that the State violated its obligation of due diligence pursuant to Md. Rule 4-263(c)(1) by failing to identify and disclose the jail call recordings until the morning of trial. Petitioner cites this Court's definition of due diligence from *Argyrou v. State*, 349 Md. 587, 604, 709 A.2d 1194, 1202 (1998), which examined due diligence in the context of Md. Rule 4-331(c) (providing the grant of a new trial on the basis of newly discovered evidence). Petitioner notes that due diligence requires both good faith and timeliness. According to Petitioner, the State's effort to locate the jail recordings on the eve of trial violated the timeliness component of due diligence. The lack of knowledge of the recordings, according to Petitioner, did not excuse the State from its obligation of due diligence during discovery. Petitioner also argues the State's assertion,

---

[5] Maryland Rule 4-265(d) provides:

**(d) Filing and Service.** Unless the court waives the time requirements of this section, a request for subpoena shall be filed at least nine days before trial in the circuit court, or seven days before trial in the District Court, not including the date of trial and intervening Saturdays, Sundays, and holidays. At least five days before trial, not including the date of the trial and intervening Saturdays, Sundays, or holidays, the clerk shall deliver the subpoena for service pursuant to [Md.] Rule 4-266(b). Unless impracticable, there must be a good faith effort to cause a trial subpoena to be served at least five days before the trial.

that Petitioner deliberately concealed his conversation with Mr. Gilbert by using the PIN number of another inmate is unsupported by the record.

Finally, Petitioner contends that the late disclosure prejudiced his defense and necessitates vacating his conviction. Petitioner notes that the purpose of discovery is to assist the defendant in preparing a defense and to prevent unfair surprise. According to Petitioner, both of these purposes were violated by the State. Petitioner did not learn about the jail call recordings until the morning of the trial, which meant that it had no time to adjust its trial strategy that had been in the works for months. Petitioner asserts that the State intentionally delayed seeking the calls and in doing so, engaged in "gamesmanship" in violation of discovery rules. The call itself provided evidence of Petitioner's consciousness of guilt, which meant the jury was presented incriminating evidence without an adequate opportunity for the defense to respond.

The State argues that the scope of its discovery obligations did not extend to the correctional facility, because the scope of its obligations extends only to materials under the possession or control of the State's Attorney, or someone who reports regularly to the State's Attorney, such as a staff member or law enforcement. A correctional facility staff member, according to the State, is not a person who regularly reports to the State's Attorney. The State asserts that its discovery obligations may extend to persons outside of its office only if they constitute a prosecutorial arm of the government. A correctional facility, like other state agencies including mental health facilities or juvenile detention facilities, do not operate for the purpose of investigating or prosecuting cases. Nor does a correctional facility, unlike a prosecutor or a police officer, report to the State's Attorney.

14

The State contends no reporting relationship emerged between the correctional facility and the State's Attorney's Office in the case at bar. The State requested the calls from a correctional facility employee, who did not respond until the next day. The Assistant State's Attorney also emailed the employee over the weekend preceding the trial and did not receive a response until Monday morning. In both of these instances, according to the State, the correctional facility fulfilled requests for information, which does not establish a reporting relationship as contemplated by Md. Rule 4-263(c).

The State also raises practical concerns about Petitioner's interpretation of the State's discovery obligations. Incarcerated defendants, including Petitioner, may make jail calls from the time of arrest until trial. The State argues that it would be impractical to require continuous requests for jail calls during this time period. Interpreting the scope of Md. Rule 4-263(c) to include a correctional facility, according to the State, would place an undue burden on prosecutors because it would extend mandatory disclosures from within the State's Attorney's Office and its agents to virtually any state agency that may possess discoverable information.

The State also rejects Petitioner's contention that its late disclosure constituted "strategic, last-minute gamesmanship[,]" by drawing a distinction between the State's *capacity* to acquire the jail call recordings at an earlier date and the State's *obligation* to acquire the jail call recordings at an earlier date. The State notes that it could have made an earlier inquiry, but it was not required to do so.

Therefore, the State asserts that its obligation to act promptly in disclosing the jail calls did not materialize until the State gained possession of the material. The State

received the calls on Friday, August 3, reviewed them over the weekend to identify which calls were relevant, and disclosed the calls on Monday, August 5. The State notes that the April 2 call—used in its case-in-chief—was not obtained by the State until Monday, August 5. The State alternatively argues that even if it had an obligation to disclose the jail recordings sooner, Petitioner's attempt to conceal the call from detection prevents any finding of unfair surprise.

Assuming *arguendo* that a discovery violation occurred, the State argues that the circuit court imposed an appropriate remedy. The State contends that the circuit court has discretion to impose or not impose a sanction for a discovery violation. In this case, the circuit court declined the defense's request for a one-day continuance, but accepted the State's offer to delay mentioning the April 2 call or Mr. Gilbert's testimony until the second day of trial to give defense counsel an opportunity to review the recording. The circuit court's exercise of discretion, according to the State, appropriately remedied any violation that may have arisen from the State's morning-of disclosure.

Finally, the State argues that even if the circuit court erred by not continuing the trial one day for a fifteen-minute phone recording that the State received and disclosed within the same day, the error was harmless. Defense counsel reviewed the call but did not make any arguments during trial relating to its late disclosure. The State conceded the call was not a "smoking gun" because it only contained speculation about who made the anonymous tip to police about the identity of Mr. Gilbert. The recording tended to demonstrate consciousness of guilt of Petitioner, but according to the State, did not affect

16

the verdict given the panoply of other evidence that more clearly demonstrated consciousness of guilt.

**Application of Md. Rule 4-263(c)**

A.     **The scope of the State's mandatory disclosure obligations pursuant to Md. Rule 4-263(c)(2) does not include jail call recordings held by a state correctional facility that has not reported to the State in a particular case.**

Md. Rule 4-263(c) provides:

> **(c) Obligations of the Parties.**
>
> (1) *Due Diligence*.  The State's Attorney and defense shall exercise due diligence to identify all of the material and information that must be disclosed under this Rule.
>
> (2) *Scope of Obligations*.  The obligations of the State's Attorney and the defense extend to material and information that must be disclosed under this Rule and that are in the possession or control of the attorney, members of the attorney's staff, or any other person who either reports regularly to the attorney's office or has reported to the attorney's office in regard to the particular case.
>
> **Cross reference**: For the obligations of the State's Attorney, see *State v. Williams*, 392 Md. 194[, 896 A.2d 973] (2006).

"To interpret [discovery rules], we use the same canons and principles of construction used to interpret statutes." *Williams*, 392 Md. at 206, 896 A.2d at 980 (quoting *State ex rel. Lennon v. Strazzella*, 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993)).  We begin our analysis by looking at the plain meaning of the rule.  *Johnson*, 360 Md. at 264–65, 757 A.2d at 804.

"When the words are clear and unambiguous, ordinarily we need not go any further. . . .  Only when the language of the rule is ambiguous is it necessary that we look elsewhere to ascertain legislative intent."  *Williams*, 392 Md. at 207, 896 A.2d at 980

17

(quoting *Strazzella*, 331 Md. at 274–75, 627 A.2d at 1057) (citations omitted).  This Court may "search[] for rulemaking intent in other indicia, including the history of the Rule or other relevant sources intrinsic and extrinsic to the rulemaking process, in light of: (1) the structure of the Rule; (2) how the Rule relates to other laws; (3) the Rule's general purpose; and (4) the relative rationality and legal effect of various competing constructions." *Green*, 456 Md. at 125, 171 A.3d at 1178 (citations, quotations, and other marks omitted).

"We may also consider other persuasive sources beyond the text of the rule, particularly case law interpreting the rule in question." *Williams*, 364 Md. at 171 n.13, 771 A.2d at 1088 n.13.  Case law interpreting prior versions of the rule is both persuasive and instructive.  *Id.*, 771 A.2d at 1088 n.13.

This Court in *Williams* examined the plain text of the substantially similar predecessor to Md. Rule 4-263.[6]  The scope of mandatory discovery obligations for the State comprised three groups: (1) the State's Attorney, (2) his or her staff members, (3) and those "who have participated, or are participating, in the case itself, by, for example, participating 'in the investigation or evaluation of the action[,]' *regularly reporting to the*

---

[6] The previous version of Md. Rule 4-263(c), which was formerly labeled Md. Rule 4-263(g), stated:

> The obligations of the State's Attorney under this Rule extend to material and information in the possession of the State's Attorney and staff members and any others who have participated in the investigation or evaluation of the action and who either regularly report, or with reference to the particular action have reported, to the office of the State's Attorney.

*Williams*, 364 Md. at 176–77, 771 A.2d at 1091.

18

*State's Attorney's Office*, or, with respect to the case under review, *have reported to the State's Attorney's Office*." 392 Md. at 208, 896 A.2d at 981 (emphasis added).

While the *Williams* Court did not address whether the scope of the State's discovery obligations extended to other State agencies, this Court held that such mandatory disclosures would only apply in limited circumstances, precisely enumerated by the rule. *Id.* at 209–10, 896 A.2d at 982 ("We hold that by referring only to the 'State's Attorney and staff members,' without any restriction, and then including 'any others,' *restricted to those with a direct present or past involvement with the particular action*, [the rule] draws a distinction between the State's Attorney's Office and those outside that Office who are on the prosecution team.") (Emphasis added).

This Court reached a similar conclusion in *Thomas v. State*, 397 Md. 557, 919 A.2d 49 (2007). In *Thomas*, a defendant told an FBI Agent, following his arrest, that "God has forgiven me." *Id.* at 564, 919 A.2d at 53. The case proceeded to trial in the Circuit Court for Charles County. The prosecutor advised the circuit court that he learned of the "God has forgiven me" statement one week before trial and informed defense counsel the same day. *Id.*, 919 A.2d at 53–54. The defense objected to the untimely disclosure as a violation of Md. Rule 4-263, but the circuit court determined that there was no discovery violation. *Id.* at 565, 919 A.2d at 54. The defendant was convicted and appealed. *Id.* at 565–66, 919 A.2d at 54. Noting that FBI agents do not regularly report to the State's Attorney's Office, the Court of Special Appeals held that the defendant's statements to the FBI agent did not fall within the State's disclosure obligation until the agent first "reported" that information

19

to the State's Attorney. *Thomas v. State*, 168 Md. App. 682, 695, 899 A.2d 170, 178 (2006).

This Court agreed that the scope of discovery obligations generally does not extend to agents outside the State's Attorney's Office:

> Ordinarily, the obligation to . . . provide discovery [and] impute information within the knowledge of a State agent to the State's Attorney, does not apply to federal agents because *they do not usually participate in the investigation or evaluation of the action and do not either regularly report, or with reference to the particular action, actually report to the office of the State's Attorney.*

*Thomas*, 397 Md. at 569, 919 A.2d at 56 (emphasis added). However, the FBI agent in *Thomas* may have triggered the discovery obligations of the State because "[h]e participated in the investigation as a member of the Washington, D.C. Cold Case Unit, he arrested [Thomas], and he wrote a report in the matter." *Id.*, 919 A.2d at 56.[7]

This Court's prior interpretation of the scope of the State's discovery obligations demonstrates that a jail call recording, held by a correctional facility, does not trigger the State's mandatory disclosure requirements pursuant to Md. Rule 4-263(c) because the correctional facility is not part of the State's Attorney's Office, nor does it directly or regularly report to the State's Attorney in this case. This Court considered extending the scope of Md. Rule 4-263(c) to an FBI agent in *Thomas* because the record demonstrated that the FBI agent was working hand in glove with Maryland law enforcement and the State's Attorney. Unlike the FBI agent in *Thomas*, who arrested the defendant, solicited

---

[7] This Court never determined whether the statement made to an FBI agent triggered the mandatory disclosure obligation of the State because it concluded the belated disclosure was not prejudicial. *Id.* at 569, 919 A.2d at 56.

20

an incriminating statement during a criminal investigation, and wrote a report, a correctional facility generally takes no part in the investigation or prosecution of someone who happens to be detained in that facility.

We reject Petitioner's contention that the correctional facility reported to the State's Attorney in this particular case by providing the jail call recordings upon request. The State requested material held by the correctional facility that was equally available to both parties. The correctional facility, like any state agency responding to an information request, fulfilled a ministerial function. *See Blundon v. Taylor*, 364 Md. 1, 17 n.9, 770 A.2d 658, 667 n.9 (2001) ("[c]lerical duties are generally classified as ministerial") (citations and quotation omitted).

We are not persuaded by the claim of Petitioner that requesting the records via email, as opposed to subpoena pursuant to Md. Rule 4-265(d), demonstrates preferential treatment, thereby establishing a reporting relationship between the correctional facility and the State's Attorney. The plain text of the rule does not define "reports regularly" or "has reported[,]" but Petitioner's interpretation of the rule would lead to untenable results. *See Frost v. State*, 336 Md. 125, 137, 647 A.2d 106, 112 (1994) ("[W]e seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense."). If information sharing between state entities without a subpoena established a reporting relationship, then there would be no limit to the State's Attorney's disclosure obligations. Petitioner's interpretation would significantly expand the scope of the rule as articulated by this Court in *Williams* and *Thomas*, which held that mandatory disclosure *only* extends

21

to the State's Attorney's Office, its support staff, and agents who regularly participate in the investigation or prosecution of a case, or who have participated in the specific case.

We hold that the scope of the State's discovery obligations did not extend to a jail call recording in the possession of a state correctional facility, a facility that was not part of the State's Attorney's Office, nor did it participate in the investigation or prosecution of the instant case.

**B. The State exercised due diligence in disclosing the jail call recordings under the circumstances.**

Maryland Rule 4-263(c)(1) obligates parties to exercise due diligence in identifying all information and material that must be disclosed under the rule. This Court has not examined the due diligence requirement pursuant to Md. Rule 4-263(c)(1) since its addition to the rule in a 2008 amendment. Like Md. Rule 4-263(c)(2), we interpret the plain text of Md. Rule 4-263(c)(1) in light of the object and purpose of the rule, and may consult its enactment history and case law for interpretive guidance.

The plain text of Md. Rule 4-263(c)(1) indicates that the obligation for due diligence only attaches to material "that *must* be disclosed under this Rule." (Emphasis added). Material must be disclosed when two conditions are satisfied. First, as discussed above, the material must fall within the scope of discovery obligations pursuant to Md. Rule 4-263(c)(2), *i.e.,* "in the possession or control of the attorney, members of the attorney's staff, or any other person who either reports regularly to the attorney's office or has reported to the attorney's office in regard to the particular case." Md. Rule 4-263(c)(2).

Second, the material must satisfy one of the several categories of information enumerated by Md. Rule 4-263(d). Maryland Rule 4-263(d)(1) is the category of information relevant to the instant case because it pertains to statements of the defendant. It requires the State's Attorney to provide the defense, without a request, "[a]ll written and oral statements of the defendant and of any co-defendant that relate to the offense charged and all material and information, including documents and *recordings*, that relate to the acquisition of such statements[.]" Md. Rule 4-263(d)(1) (emphasis added). We assume without deciding that at least some of the jail call recordings between Petitioner and Mr. Gilbert satisfied Md. Rule 4-263(d)(1) because the material contained statements of the defendant that referenced the ongoing prosecution.

The statements did not meet the first condition necessary for mandatory disclosure—"in the possession or control" of the State's Attorney or a person that reports regularly to the State's Attorney or had reported in the particular case—until Friday, August 5 when the State received the recordings from the correctional facility. Md. Rule 4-263(c)(2). Therefore, the obligation to exercise due diligence, according to the plain text of the rule, did not attach until it came into the actual or constructive possession or control of the State's Attorney. *See Warrick v. State*, 302 Md. 162, 170–71, 486 A.2d 189, 193 (1985) ("There are, nevertheless, limitations on the State's obligations under Md.[ ]R. 741 a 2 [the predecessor to Md. Rule 4-263]. . . . [*The rule*] *limits that which is discoverable . . . to material and information in possession or control of* [the State's Attorney, of] members of his [or her] staff and of any others who have participated in the investigation or evaluation of the case and who either regularly report or with reference to the particular

23

case have reported to his [or her] office.") (quotation and footnote omitted) (emphasis added).

This plain text interpretation of due diligence is consistent with the object and purpose of discovery, the history of Md. Rule 4-263(c)(1), and relevant case law. *Berry v. Queen*, 469 Md. 674, 688, 233 A.3d 42, 50 (2020) ("In addition to the plain language, the modern tendency of this Court is to continue the analysis of the statute beyond the plain meaning . . . in order to 'check [] our reading of a statute's plain language[.]'. . .") (quoting *In re: S.K.*, 466 Md. 31, 50, 215 A.3d 300, 311 (2019)) (citations omitted).

The main objective of the discovery rule is to assist the defendant in preparing his defense, and to protect him from surprise. *Hutchins v. State*, 339 Md. 466, 473, 663 A.2d 1281, 1285 (1995); *Mayson v. State*, 238 Md. 283, 287, 208 A.2d 599, 602 (1965). The rule accomplishes its purpose through its mandatory disclosure provisions. *Collins v. State*, 373 Md. 130, 146–47, 816 A.2d 919, 928 (2003) (quoting *Williams*, 364 Md. at 172, 771 A.2d at 1089). There is nothing in the plain text of Md. Rule 4-263(c)(1) that *requires* due diligence in identifying material that falls outside mandatory disclosure provisions. *State v. Cork*, 322 Md. 93, 103, 585 A.2d 833, 838 (1991) (noting that the Maryland Rules are "precise rubrics" to be strictly followed). The obligation of due diligence helps protect the defendant from unfair surprise, but the underlying purpose of Md. Rule 4-263 does not warrant extending the obligation of due diligence to materials beyond the grasp of the State's Attorney. The State should always err on the side of disclosure, *State v. Brown*, 327 Md. 81, 95, 607 A.2d 923, 930 (1992), but the right to discovery is not unlimited. *Derr v. State*, 434 Md. 88, 124, 73 A.3d 254, 275 (2013).

24

The history of Md. Rule 4-263 supports the conclusion that the obligation of due diligence does not attach until the material comes within the possession or control of the State's Attorney, or a person who regularly reports to the State's Attorney, or has reported to the State's Attorney in the particular case. The Standing Committee on Rules of Practice and Procedure ("the Rules Committee") submitted its One Hundred Fifty-Eighth Report to this Court in 2007, in which it proposed the addition of the due diligence requirement to Md. Rule 4-263. The purpose of the amendment was to "to clarify the State's discovery obligations . . . and make other changes to discovery in a criminal action in a circuit court[.]" Standing Committee on Rules of Practice and Procedure, *One Hundred Fifty-Eighth Report of the Standing Committee on Rules of Practice and Procedure* at 4 (Sept. 26, 2007). The Committee Note[8] explained the addition of due diligence to the rule:

> The due diligence required by subsection (a) (1) *does not require affirmative inquiry by the State with regard to the listed examples [of materials that must be disclosed under the rule] in all cases,* but would require such inquiry into a particular area *if information possessed by the State*, as described in subsection (a) (2), would reasonably lead the State to believe that affirmative inquiry would result in discoverable information.

*Id.* at 110 (emphasis added).

The Committee Note highlights that the obligation for due diligence is not an affirmative duty, but one triggered by information in *possession* of the State. As an example, the Committee Note provides that "[d]ue diligence does not require the State to obtain a copy of the criminal record of a State's witness *unless the State is aware* of the

---

[8] A Committee Note is incorporated into the Maryland Rules. *Green*, 456 Md. at 145 n.8, 171 A.3d at 1189 n.8.

25

criminal record. If, upon inquiry by the State, a witness denies having a criminal record, the inquiry and denial generally satisfy due diligence unless the State has reason to question the denial." *Id.* at 110–11 (emphasis added). A criminal record, like a recorded statement of the defendant, constitutes a type of material that the State's Attorney shall provide to the defense without request. Md. Rule 4-263(d)(2). The Committee Note indicates that the State would not have an obligation to track down a criminal record with due diligence, unless the State is *at least* aware of the criminal record.

The history of Md. Rule 4-263(c)(1) demonstrates that the State's Attorney does not have an obligation to track down a recording made by the defendant in the possession of a third party, unless the State's Attorney was *at least made aware* of the existence of that recording. Once the State became aware of the recording held by a third party, it likely would have the obligation to exercise due diligence in identifying and obtaining the recording. This conclusion is underscored by the reporter's note which acknowledged that the obligation of due diligence attaches to material that each party is *required to provide*. *Id.* at 119. Nothing in the report submitted by the Rules Committee indicated that due diligence obligates the State to proactively request materials that may or may not be held by third parties.

In the case at bar, the State did not become aware of the recorded statements made by the Petitioner while incarcerated at the correctional facility until it requested and received such statements on Friday, August 2. Upon receipt of the materials, the State had had an obligation to exercise due diligence in identifying whether any of the recordings must be disclosed pursuant to Md. Rule 4-263(d)(1). We find nothing in the record that

26

indicates the State's prior awareness of the recorded statements until it received the materials from the correctional facility on Friday, August 2, 2019.

Petitioner argues that the requirement of due diligence pursuant to Md. Rule 4-263(c)(1) should have obligated the State to investigate the existence of any jail call recordings prior to the week before trial. Even if the State was not actually aware of the recordings, Petitioner contends that the State should have been aware of the recordings.

Petitioner's argument is not supported by the text or history of the rule. The plain text of the rule expressly omits any language that the State should proactively discover materials held by third parties uninvolved in the prosecution or investigation of a case. The history of the rule indicates that this omission was not inadvertent. Following a hearing on the One Hundred Fifty-Eighth Report, the Rules Committee undertook "a further review of the discovery process in criminal cases in light of the ABA Standards, what is ultimately required under both Federal and Maryland Constitutional law, and how the discovery process can be clarified, made more effective, and promote greater fairness and efficiency in overall criminal procedure." Standing Committee on Rules of Practice and Procedure, *Supplement to the One Hundred Fifty-Eighth Report of the Standing Committee on Rules of Practice and Procedure* at 2 (Mar. 28, 2008) ("the Supplement"). The rule as it stands now reflects the changes proposed by the Rules Committee.

In its review, the Rules Committee:

obtained and considered both the ABA Standards and the ABA Commentary to them. It had available to it the discovery rules applicable in Federal criminal cases and the rules adopted in other States, along with relevant case law. All of the individuals and groups that had indicated an interest in the matter were invited to submit written comments regarding the ABA

27

Standard[s,] and whether, or to what extent, there should be any departure from them. The Criminal Rules Subcommittee met, [and] gave initial consideration to the ABA Standards and the written comments that had been received[.] . . .

*Id.*

This Court considered but declined to fully adopt the more permissive ABA Standards with respect to Md. Rule 4-263. *Id.* at 3. "[O]ne of the principal objectives of the rewriting of [Md.] Rule[] . . . 4-263 is to bring greater clarity to what is required, so that disputes can be avoided and the process can work more effectively. To that end, [Md.] Rule 4-263 provides some common examples of information . . . [that] would need to be disclosed. Those examples are not intended to *extend* the scope of discovery but better to *define* it." *Id.* at 3–4 (emphasis in original).

The Supplement also reveals an intent to make the due diligence obligation less demanding than the ABA counterpart. Appendix C of the Supplement[9] noted that the due diligence requirement "is generally consistent with [ABA Standards] but is stated in somewhat broader terms." Supplement, App'x C at 3.[10]

---

[9] "Unlike a Committee Note, an appendix to a Report of the Rules Committee does not become incorporated into the Maryland Rules." *Green*, 456 Md. at 145 n.8, 171 A.3d at 1189 n.8.

[10] Assuming *arguendo* that the more permissive ABA due diligence obligation was the Maryland Rule, the State presumably still would have not violated discovery rules.

Standard 11-4.3(b) requires the [prosecutor] to make reasonable efforts to ensure that information relevant to the defendant and the offense is provided to the prosecutor *by investigative personnel*. Standard 11-4.3(c) provides that, if the prosecutor is *aware* of discoverable information possessed by a government agency that does not report to the prosecutor's office, the

(continued . . . )

28

The Rules Committee added to Md. Rule 4-263(c) the cross-reference to *State v. Williams*, 392 Md. 194, 896 A.2d 973 (2006), to illustrate, in part, the limits of the obligation of due diligence. *Williams* concerned exculpatory information pertaining to a registered police informant that was unknown to the assigned prosecutor, but was well known to the Baltimore City Police Department and the State's Attorney. *Id.* at 200, 896 A.2d at 976. While describing the disclosure obligations under *Brady*, this Court remarked:

> [I]t is proper to consider the State's Attorney Office as a single entity. As the seeker of truth, the State, as prosecutor, cannot seek to insulate itself from its constitutionally mandated duty by dividing itself into pieces, thus permitting one piece to claim ignorance of the knowledge of the other pieces. . . . By enforcing a consistent standard applicable to *all in the State's Attorney's Office*, we believe that nondisclosures such as the one leading to this appeal will be avoided.

*Id.* at 223, 896 A.2d at 990 (emphasis added). The State violated its obligation of due diligence in *Williams* because it failed to overcome artificial divisions *within its office and law enforcement* to provide material to the defendant. The material was at all times within the possession, control, or at least knowledge, of the State's Attorney or one of its agents, but the State failed to take reasonable steps to deliver the information to defense counsel.

---

(. . . continued)

       prosecutor must disclose the existence of that information.

*Id.* (Emphasis added). The ABA rule requires due diligence once the information comes into the possession of an investigator or the prosecutor becomes aware of the information. Like its Md. Rule 4-263 counterpart, the ABA rule notably omits language such as "should have been aware" of the information. The correctional facility was not a State investigator, and the State could not have been aware about the discoverable material until it received the recordings on August 2.

29

Pursuant to the plain text of Md. Rule 4-263(c)(1), persuasive commentary of the Rules Committee and relevant case law, the obligation of due diligence did not take effect in the case at bar until the State received the jail call recordings on Friday, August 2. Once the State acquired the recordings, it satisfied its due diligence obligation by disclosing the material within several days. Whether a party exercised due diligence depends on the circumstances of the case. *See Argyrou*, 349 Md. at 605, 709 A.2d at 1203 (noting the assessment of due diligence, at least in the context of newly discovered evidence, must be assessed "in light of the totality of circumstances"); *Joyner v. State*, 208 Md. App. 500, 529, 56 A.3d 787, 805 (2012) (holding no discovery violation occurred when the State disclosed expert testimony eight days before trial because State fulfilled its continuing duty to disclose); *Raynor v. State*, 201 Md. App. 209, 229, 29 A.3d 617, 629 (2011) (concluding that defendant may have been surprised by the reference to previously undisclosed emails during trial, but the circuit court did not abuse its discretion in not granting a mistrial).

In anticipation of trial, the State requested jail calls made by Petitioner from an employee at the correctional facility on Wednesday, July 31. The employee responded Thursday, August 1 and informed the State that it would deliver the material on Friday August 2. The State reviewed the calls on Saturday. The State contacted the employee on Sunday to request a reverse-look up of Mr. Gilbert's number, and received the April 2 call at 6 a.m. on Monday, August 5.

Three days elapsed between the State's possession of the 201 recordings of calls made by Petitioner and sharing with defense counsel. The State could have immediately disclosed all 201 calls that it received on Friday, but under the circumstances, it would have

30

only provided at most two days extra notice to defense counsel. Considering these calls arrived on the eve of trial, sending 201 recordings, most of which the State decided *not* to use for trial, could have unduly burdened the defense with extraneous discovery review during a period of critical trial preparation. *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 13, 174 A.2d 768, 771 (1961) (noting the purpose of discovery is to "eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind[.]"). The April 2 recording—used in the State's case-in-chief—was shared with defense counsel on the same day that it was received. The State could not have shared the April 2 call any sooner.

The State's decision to request a reverse look-up of Mr. Gilbert's phone number also tends to demonstrate the exercise of due diligence under the circumstances. The initial request of jail calls made by Petitioner did not include the April 2 call because it was made through the PIN number of another inmate. Regardless of whether Petitioner deliberately attempted to conceal the call by using another inmate's PIN number, it would not have been found but for the endeavor of the State under the circumstances. We conclude that the State exercised due diligence in this case.

**C.** **Even if the State violated its discovery obligations through its late disclosure, the error was harmless.**

In the past, this Court has applied harmless error review when assessing the impact of a discovery violation. *Green*, 456 Md. at 165, 171 A.3d at 1201. The purpose of the harmless error rule is to prevent a small error, "assuming, [*arguendo*], that [there] was error[,]" from setting aside convictions for a defect that would not have changed the result

31

at trial. *State v. Babb*, 258 Md. 547, 552, 267 A.2d 190, 193 (1970). Assuming *arguendo* that the State's disclosure of the jail call recordings on the morning of trial violated its discovery obligations, it was harmless error beyond a reasonable doubt.

"[W]hen a discovery violation comes to light in the course of trial, whether any sanction is to be imposed and, if so, what it is to be, is in the first instance committed to the discretion [of] the trial judge. The exercise of that discretion includes evaluating whether a discovery violation has caused prejudice." *Warrick*, 302 Md. at 173, 486 A.2d at 194 (citations omitted). The rule "does not require the court to take any particular action *or any action at all*." *Bellard v. State*, 229 Md. App. 312, 340, 145 A.3d 61, 78 (2016) (quoting *Thomas*, 397 Md. at 570, 919 A.2d at 57) (emphasis added).

The determination of the circuit court "will be disturbed on appellate review only if there is an abuse of discretion. That review, however, does not involve a search of the record for grounds, not relied upon by the [circuit] court, which the appellate court believes could [or could not] support the [circuit] court's action." *North River Ins. Co. v. Mayor and City Council of Baltimore*, 343 Md. 34, 47–48, 680 A.2d 480, 487 (1996). "An appellate court does not reverse a conviction based on a [circuit] court's error or abuse of discretion where the appellate court is satisfied beyond a reasonable doubt that the [circuit] court's error or abuse of discretion did not 'influence the verdict' to the defendant's detriment." *Hall v. State*, 437 Md. 534, 540–41, 87 A.3d 1287, 1291 (2014) (citations omitted). A discovery violation that unfairly surprises a defendant and prejudices the ability of a defendant to mount an adequate defense generally "cannot be construed as harmless error." *Collins*, 373 Md. at 148, 816 A.2d at 929; *Thomas*, 397 Md. at 574, 919

32

A.2d at 59 (explaining that prejudice pursuant to Md. Rule 4-263 turns on the harm resulting from delay in disclosure).

In *Thanos v. State*, 330 Md. 77, 622 A.2d 727 (1993), the circuit court declined to grant relief for an asserted discovery violation by the State. *Id.* at 96, 622 A.2d at 736. According to the defendant in *Thanos*, "the State neglected to provide him with the names of three witness whom it called at trial, in violation of Maryland Rule 4-263(b)(1).[11]" *Id.* at 96, 622 A.2d at 736 (footnote omitted). This Court held that assuming the State violated Md. Rule 4-263 by failing to provide the names of three witnesses called at trial, "any error in the State's discovery violations was harmless" given ample corroborating evidence. *Id.* at 97, 622 A.2d at 736. The defendant had confessed to the crime, and the State provided testimony of a medical examiner that "independently corroborated [the defendant's] confession[.]" *Id.*, 622 A.2d at 736. "The [circuit] court's failure to grant relief for the State's discovery violations was not reversible error." *Id.*, 622 A.2d at 736–37.

Similar to the State's corroborating evidence in *Thanos*, in the case at bar, the State presented evidence that established consciousness of guilt independent of the April 2 call. The State introduced the April 2 call to establish that Petitioner knew about the security camera footage of the shooting and that somebody had revealed the identity of Petitioner or Mr. Gilbert to law enforcement:

> Mr. Gilbert: It was her or somebody close to us.
> &ast;&ast;&ast;
> Mr. Gilbert: I ain't done nothing.

---

[11] Maryland Rule 4-263(b)(1) formerly required the State provide the defense without request the names of each State's witness. This requirement is now provided by Md. Rule 4-263(d)(3)(A).

33

[Petitioner]: Shut up.
Mr. Gilbert: Hey, I don't. That's how it is bro. That's how I'm going to be, you feeling me? . . . There wasn't no problem when you did that.
[Petitioner]: Yeah.

The conversation does not directly reference the shooting or the camera, and was hampered by unintelligible dialogue when played before the jury. Conversely, the text exchange between Petitioner and Mr. Gilbert expressly demonstrates relief that certain events were not caught on film by the alleyway camera where the shooting took place:

[Petitioner:] Is dere a camera At dat lil side bar[?]
[Petitioner:] And Erin just asked me bout you[.]
[Mr. Gilbert:] Tell her hit me[.]
[Mr. Gilbert:] N id[]k we Gucci doe babe[.]

The State also provided additional evidence that established the guilt of Petitioner, including forensic evidence, pictures and video footage of the scene, 911 audio, and multiple witnesses' testimony.

The call also did not unfairly surprise the defendant or prejudice the ability of the defendant to mount a defense. *Thomas*, 397 Md. at 574, 919 A.2d at 59. Petitioner was already prepared to negate the allegation of consciousness of guilt from the text exchange between Petitioner and Mr. Gilbert. Petitioner emphasized throughout the trial that the State relied on circumstantial evidence, and the April 2 call was another example of the State using a chain of inferences, instead of an express statement by Petitioner, to demonstrate consciousness of guilt. Petitioner also chose not to address the April 2 call in his case-in-chief, instead presenting an argument about its authentication. Finally, Petitioner argued throughout the trial, and even before this Court, that the State had a weak case.

34

We find no indication that the April 2 call, coupled with other evidence presented over the course of two days at trial, had substantial bearing on the outcome of the case. The disclosure of evidence in this case was undoubtedly last minute, but the impact of the disclosure did not unduly surprise the defendant, undermine the ability to prepare a defense, or substantially influence the jury. *Thomas*, 397 Md. at 574, 919 A.2d at 59. Therefore, the decision of the circuit court not to find a discovery violation, assuming *arguendo* that it was made in error, was harmless beyond a reasonable doubt.

## CONCLUSION

For the reasons previously explained, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

35

IN THE COURT OF APPEALS

OF MARYLAND

No. 4

September Term, 2021
_____

ERIC ANTONIO ALARCON-OZORIA

v.

STATE OF MARYLAND
_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.
_____

Dissenting Opinion by Watts, J.
_____

Filed: December 21, 2021

Respectfully, I dissent. I cannot join the Majority's determination that in a criminal case the State's requirement to exercise due diligence with respect to discovery extends no further than to material already within the State's Attorney's possession or control. See Maj. Slip. Op. at 22. Such an interpretation of Maryland Rule 4-263 is contrary to its plain language and rulemaking history. Maryland Rule 4-263(c)(1) obligates the State's Attorney to "exercise due diligence to identify all of the material and information that must be disclosed under this Rule." The plain language of the subsection is not qualified or limited by a requirement that the State's Attorney use due diligence to identify only discoverable information that is already in the State's possession or control.

I would not read into the subsection a requirement that does not exist and that the history of the Rule does not support. I would hold that the State's Attorney in this instance failed to exercise due diligence by waiting until the Wednesday before a trial was scheduled to begin on Monday to request, as part of "last-minute" trial preparation, jail call recordings and by disclosing the recordings on the first day of trial. I would determine that a discovery violation occurred and that the error was not harmless.

I share the view that a correctional facility does not become an agency that reports to the State's Attorney by virtue of having responded to a request for jail call records and, as such, the records were not under the control of the State's Attorney within the meaning of Maryland Rule 4-263(c)(2). See Maj. Slip. Op. at 21. A contrary result could lead to the illogical conclusion that any agency, or perhaps any individual, would "report" to the State's Attorney within the meaning of the Rule by simply responding to a request for information. See Maj. Slip. Op. at 21.

This inquiry, however, distracts from recognizing the State's Attorney's obligation under Maryland Rule 4-263(c)(1), which provides: "The State's Attorney and defense shall exercise due diligence to identify all of the material and information that must be disclosed under this Rule." Maryland Rule 4-263(c)(2) provides:

> The obligations of the State's Attorney and the defense extend to material and information that must be disclosed under this Rule and that are in the possession or control of the attorney, members of the attorney's staff, or any other person who either reports regularly to the attorney's office or has reported to the attorney's office in regard to the particular case.

Clearly, material and information that must be disclosed under the Rule may be distinct or different from material and information that is possessed by or under the control of the State's Attorney. Under a plain reading of Maryland Rule 4-263(c)(1), the State's Attorney is required to use due diligence to identify all of the material and information that must be disclosed under the Rule regardless of whether the material and information is in the possession or control of the State's Attorney.

Maryland Rule 4-263(d) sets forth a list of material and information that the State's Attorney is required to disclose without the necessity of a request. Under Maryland Rule 4-263(c)(1), the State's Attorney must use due diligence to identify all material and information that must be disclosed under section (d); and, under Maryland Rule 4-263(c)(2), the State's Attorney is required to disclose all such material and information that is in the State's Attorney's possession or control. Maryland Rule 4-263(c)(1) does not limit the duty of the State's Attorney to identify material and information that must be disclosed to a discrete look at what the State already possesses or controls. Rather, Maryland Rule 4-263(c)(1) requires that the State's Attorney identify or promptly follow up on identifying

information that must be disclosed under the Rule, such as a defendant's oral statements, regardless of whether the information is in the State's possession or control.

Under Maryland Rule 4-263(d)(1), "[w]ithout the necessity of a request, the State's Attorney shall provide to the defense[ a]ll written and oral statements of the defendant and of any co-defendant that relate to the offense charged[.]" No one disputes that the jail calls at issue in this case are "oral statements of the defendant" under Maryland Rule 4-263(d)(1). Because a defendant's oral statements constitute material that the State's Attorney would be required to disclose under Maryland Rule 4-263(d)(1), the plain language of Maryland Rule 4-263(c)(1) obligated the State's Attorney to exercise due diligence in identifying the existence of the statements. The Majority concludes that material must be disclosed when two conditions are met—first, "the material must fall within the scope of discovery obligations pursuant to Md. Rule 4-263(c)(2)," and second, "the material must satisfy one of the several categories of information enumerated by Md. Rule 4-263(d)." Maj. Slip Op. at 22-23. But, the Majority fails to give effect to the plain language of Maryland Rule 4-263(c)(1).

The construction of Maryland Rule 4-263(c)(1) that is consistent with its plain language is that a State's Attorney must exercise due diligence to identify material and information that must be disclosed. The plain language of (c)(1) does not confine the State's Attorney's due diligence requirement to the scope provision of (c)(2) or use any limiting language. In other words, if the circumstances of a case indicate to the State's Attorney that material and information described in Maryland Rule 4-263(d) exists outside of the State's Attorney's office's possession or control, the State's Attorney may not delay

- 3 -

in identifying the material and information. The choice of the word "identify" in Maryland Rule 4-263(c)(1) is instructive. Logically, if the State's Attorney's obligation to exercise due diligence with respect to oral statements of the defendant applied only to material that the State's Attorney already possessed or controlled, the requirement that the State's Attorney "identify" material and information that must be disclosed would be rendered meaningless. The plain language interpretation of the Rule would prevent the absurd outcome of permitting the State's Attorney to be aware of the likelihood of oral statements by a defendant or exculpatory information, for example, but having no duty to exercise due diligence to identify the statements or exculpatory information because the statements or exculpatory information are in the custody of a third party and not in the State's Attorney's possession or control.

In addition to its plain language, the history of Maryland Rule 4-263(c)(1) supports the proposition that the due diligence obligation extends beyond material in the possession and control of the State's Attorney. In 2007, the Standing Committee on Rules of Practice and Procedure ("the Rules Committee") undertook a major overhaul of the criminal discovery rules and issued its 158th Report, in which it, among other things, proposed amendments to Maryland Rule 4-263. See Rules Committee, 158th Report at 1 (Sept. 26, 2007), available at https://www.courts.state.md.us/sites/default/files/import/rules/reports/158thReport.pdf [https://perma.cc/SU9T-RDTE]. In a cover letter to this Court dated September 26, 2007, Judge Joseph H. Murphy, then Chair of the Rules Committee, explained that "[a]mendments to Rule 4-263 [were] proposed to clarify the State's discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny and

- 4 -

make other changes to discovery in a criminal action in a circuit court, as explained in the Reporter's note that follows the Rule." 158th Report at 4. In the 158th Report, the Committee note following proposed sections (a) and (b) of Maryland Rule 4-263[1] explained the due diligence requirement as follows:

> The due diligence required by subsection (a)(1) does not require affirmative inquiry by the State with regard to the listed examples in all cases, but would require such inquiry into a particular area if information possessed by the State, as described in subsection (a)(2), would reasonably lead the State to believe that affirmative inquiry would result in discoverable information. Due diligence does not require the State to obtain a copy of the criminal record of a State's witness unless the State is aware of the criminal record. If, upon inquiry by the State, a witness denies having a criminal record, the inquiry and denial generally satisfy due diligence unless the State has reason to question the denial.

158th Report at 110-11 (underlining omitted).

This Court held an open meeting on the 158th Report and deferred consideration of the proposed amendment to Maryland Rule 4-263 "pending further study[.]" Court of Appeals of Maryland, Rules Order at 3 (Dec. 4, 2007), available at https://www.courts. state.md.us/sites/default/files/import/rules/rodocs/ro158.pdf [https://perma.cc/RC3C-UPDX]. After we deferred consideration of the 158th Report for further study, on March 7, 2008, the Rules Committee held a meeting and discussed the proposed amendment of Maryland Rule 4-263. See Rules Committee, Minutes of Meeting at 4 (Mar. 7, 2008), available at https://www.courts.state.md.us/sites/default/files/minutes-rules/20080307.pdf [https://perma.cc/QA6Q-FGX3]. Subsequently, in a Supplement to the 158th Report, the

---

[1]Proposed Maryland Rule 4-263(a) and (b) later became Maryland Rule 4-263(c) and (d), respectively.

Rules Committee explained Maryland Rule 4-263(c)(1)'s relationship to the American Bar Association ("ABA") Standards for Criminal Justice. See Rules Committee, Supplement to 158th Report at 2 (Mar. 25, 2008), available at https://mdcourts.gov/sites/default/files/import/rules/reports/158supplementappx.pdf [https://perma.cc/MW5A-AGHV].

In the Supplement, the language of Maryland Rule 4-263(c)(1) was substantively identical to the language in subsection (a)(1) in the 158th Report. See 158th Report at 108; Supplement to 158th Report at 14. However, the Committee note describing the due diligence requirement no longer existed. See 158th Report at 110-11; Supplement to 158th Report at 14-15. Instead, in an appendix to the Supplement, the Rules Committee stated that Maryland Rule 4-263(c)(1) "is generally consistent with Standard 11-4.3(b) and (c) but is stated in somewhat broader terms." Supplement to 158th Report, App. C at 3. According to the Rules Committee, ABA "Standard 11-4.3(b) requires the *prosecutor* to make reasonable efforts to ensure that information relevant to the defendant and the offense is provided to the prosecutor by investigative personnel." Id. (emphasis in original). And, ABA "Standard 11-4.3(c) provides that, if the prosecutor is aware of discoverable information possessed by a government agency that does not report to the prosecutor's office, the prosecutor must disclose the existence of that information." Id.

Considering this history, it is clear that the Rules Committee intended a State's Attorney's due diligence obligation under Maryland Rule 4-263(c)(1) to extend beyond the scope of Maryland Rule 4-263(c)(2). The Rules Committee expressly informed this Court that Maryland Rule 4-263(c)(1) was intended to be "generally consistent with" ABA Standards 11-4.3(b) and (c), but "somewhat broader[.]" Id. ABA Standard 11-4.3(c)

requires that, where a prosecutor is aware of discoverable information in the possession of an agency that does not report to the prosecutor's office, that information must be disclosed. See id. It was against this backdrop that we adopted Maryland Rule 4-263(c)(1) and the requirement that a State's Attorney exercise due diligence to identify all of the material and information required to be disclosed under the Rule.

In the Appendix, the Rules Committee advised that it did not recommend adopting ABA Standards 11-4.3(d) and (e). See id. at 3-5. According to the Rules Committee, ABA

> Standard 11-4.3(d) provides that, if a request is made for identified material that would be discoverable if in the possession or control of a party but which is in the possession or control of *others*, the party must use diligent good faith efforts to cause the material to be made available.

Id. at 3 (emphasis in original). ABA "Standard 11-4.3(e) permits a court to order the disclosure of material or information, not otherwise covered under Standard 11-4.3, upon a showing that the items sought are 'material to the preparation of the case.'" Id. at 4. Thus, the Rules Committee stopped short of drafting the due diligence requirement of Maryland Rule 4-263(c)(1) to require the State to cause the "identified" material in the possession or control of third parties to be made available upon request. The Rule's history informs, just as the Rules Committee stated, that it intended to impose a due diligence obligation "somewhat broader" than ABA Standards 11-4.3(b) and (c), which include the requirement of disclosing the existence of information in the possession of a government agency that does not report to the prosecutor, but less than ABA Standards 11-4.3(d) and (e), which require obtaining information from third parties. No one who reads the history of Maryland Rule 4-263(c)(1) could seriously contend that its due diligence obligation was

intended to be limited to identifying only information and material already in the possession or control of the State's Attorney.

The determination that the Majority reaches confining the State's due diligence obligation only to material and information under its possession or control is not consistent with the plain language and Rule history of Maryland Rule 4-263(c)(1) and is far off the mark that the ABA Standards have set for discovery obligations in the legal profession. Even though our Rules Committee chose not to go as far as the ABA did in its due diligence obligation, it is clear that the Rules Committee adopted the ABA view that due diligence is not limited solely to identifying material and information in the possession or control of the State. In 2008, this Court voted unanimously to approve Maryland Rule 4-263(c)(1) based on the information provided by the Rules Committee in the Supplement to the 158th Report. We should and indeed must interpret the Rule in a manner that is consistent with the information that was provided to the Court by the Rules Committee at the time.

Aside from not being consistent with the plain language of the Rule and its history, the Majority's approach suffers from several serious problems. First, under the Majority's reading, a State's Attorney who knows of jail calls constituting statements of the defendant would not be in violation of Maryland Rule 4-263(c)(1) by waiting, as the State's Attorney did here, until shortly before trial to request the calls and disclosing to the defense the existence of the calls on the first day of trial. Next, would the State's Attorney also be permitted to delay until the day before trial interviewing a witness known to possess exculpatory information and disclosing the first day of trial exculpatory information gained from the witness because the information did not allegedly fall within the scope of the

State's Attorney's due diligence obligation until the time of the interview? This interpretation of the due diligence requirement hinders, rather than advances, the purposes of Maryland's criminal discovery rules, which are to protect from undue surprise and to assist the other party in preparing for trial. See, e.g., Green v. State, 456 Md. 97, 152-53, 171 A.3d 1162, 1193-94 (2017). The Majority's interpretation of Maryland Rule 4-263 would allow the State's Attorney to obtain a strategic and indeed unfair advantage by delaying (including inadvertently) in having information that is required to be disclosed under the Rule come into its possession or control.

The State's argument that not limiting the due diligence requirement to information in its possession or control would place an untenable burden on the State's Attorney is not persuasive. The facts of a case will dictate what action, if any, the State's Attorney must take to use due diligence to identify material and information that must be disclosed. For example, if an agency that does not report to the State possesses statements of a defendant relating to a criminal case, but the State's Attorney has no reason to know of it, due diligence would not require the State's Attorney to seek to identify any statements of the defendant in the possession of the agency.

In this case, the circumstance is different with respect to jail call recordings. Jail call recordings, by their very nature, are statements of the defendant. If a defendant is in custody before trial, it follows that the State's Attorney would know that telephone calls between a defendant and others that relate to the offense charged could exist. By the State's own acknowledgment at oral argument, the Assistant State's Attorney in this case identified the jail calls at issue during "last-minute" trial preparation. It is reasonable to

- 9 -

expect that an Assistant State's Attorney would perform routine trial preparation designed to uncover oral statements of a defendant with greater diligence than what was used here. The standard of due diligence is, at bottom, a question of reasonableness.

We have not previously addressed the definition of due diligence under Maryland Rule 4-263. In a different context, that of the State's due process obligation to promptly conduct a probation revocation hearing, due diligence is equivalent to "reasonable promptness[.]" State v. Berry, 287 Md. 491, 500, 413 A.2d 557, 562 (1980) (citations omitted). In Berry, id. at 499, 413 A.2d at 562, we held "that the State may conduct a revocation hearing at any time, even if the probationary period has expired," as long as the State commences such a proceeding "diligently and promptly." This Court held that a probation revocation hearing need not take place during the probationary period so long as the violation occurred during the probationary period. See id. at 498, 413 A.2d at 562. We stressed, however, that due process requires the State to "bring about the revocation hearing with due diligence or reasonable promptness to avoid prejudice to the defendant." Id. at 500, 413 A.2d at 562 (citations omitted).

In this case, given that the State acknowledged that requesting the jail call recordings at issue was last-minute trial preparation and has offered no reason for the delay in requesting the recordings that necessarily were required to be disclosed, I would hold that the State's Attorney failed to exercise due diligence. Maryland Rule 4-263(c)(1) obligated the State's Attorney to use due diligence to identify material and information required to be disclosed under the Rule, *i.e.*, records of jail calls or statements of the defendant under Maryland Rule 4-263(d)(1) in this case.

Although there is no indication of bad faith in the record, the State's Attorney failed to request any jail call recordings until the Wednesday before trial. The State's Attorney did not disclose the recordings to defense counsel until the morning of trial. Given the State's acknowledgment at oral argument that requesting jail call recordings in this case was simply part of last-minute trial preparation, disclosing the recordings to the defense on the morning of the first day of trial was unreasonable.[2] The record is devoid of any good cause explanation for the delay and at oral argument, the State could provide none. As such, I would hold that the State's Attorney violated Maryland Rule 4-263(c)(1) by failing to use due diligence to identify the existence of the jail call recordings.

In this case, although there were eyewitnesses to the shooting, no eyewitness positively identified Petitioner as the shooter. This was a circumstantial evidence case in which the State relied in part on evidence of consciousness of guilt and the April 2, 2019 jail call recording was part of the consciousness of guilt evidence. Even though the taped dialogue may have been difficult to understand, it is not possible to conclude beyond a reasonable doubt that the April 2, 2019 jail call recording did not affect the verdict. Because I am unable to conclude beyond a reasonable doubt that use of the April 2, 2019

---

[2]The State has argued that the April 2, 2019 jail call recording should be treated differently because the Assistant State's Attorney obtained it after requesting a "backwards search" for call records. To be sure, the request for the backwards search occurred after the Assistant State's Attorney received the initial jail call recordings. The record reflects that the search was done quickly and that the April 2, 2019 jail call recording was produced early on the morning following the Assistant State's Attorney request. This, too, was a part of last-minute trial preparation that, through due diligence, could easily have been done more promptly or earlier. There is no reason to distinguish the April 2, 2019 jail call recording from the others.

- 11 -

jail call at trial was inconsequential or did not affect the verdict, *i.e.*, was harmless error, I would reverse the judgment of the Court of Special Appeals.

For the above reasons, respectfully, I dissent.

Circuit Court for Montgomery County
Case No. 135035C
Argued: September 14, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 4

September Term, 2021

_____

ERIC ANTONIO ALARCON-OZORIA

v.

STATE OF MARYLAND

_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Adkins, Sally D. (Senior Judge,
Specially Assigned),

JJ.

_____

Concurring Opinion by Adkins, J.

_____

Filed: December 21, 2021

I commend both the Majority and Dissent for their cogent opinions. I find myself divided between them. I am persuaded by the analysis of Judge Watts with respect to the Rule 4-263(c)(1) due diligence requirement and how far it extends. I agree with her that the State's Attorney waited too long before requesting jail call recordings.

Yet I agree with Judge Hotten that, even if we were to say that admission of the telephone calls from the jail was error under the circumstances, such error was harmless. In the first place, the taped dialogue was hard to understand. Moreover, there was testimony favorable to the State from more than one eyewitness, corroborated by video footage and other evidence.

I would affirm the conviction.